# Story v. The State.

### Rape.

(Decided May 30, 1912. Rehearing denied June 29, 1912.
59 South. 481.)

1. *Criminal Law; Service of Copy of Indictment; Sufficiency.*— The motion to quash the venire and service upon the defendant because in the copy of the indictment served upon the defendant, "has" had been substituted for "had" and "of" for "or", was properly overruled, as it was an immaterial difference that could not have injured, misled, or prejudiced the defendant.

2. *Indictment; Service of Copy; Variance; Effect.*—The fact that there is a variance between the copy of the indictment served on a defendant, and the indictment, does not render the indictment subject to demurrer, although of a material matter, but merely entitles the defendant to a continuance until served with a correct copy.

3. *Rape; Evidence; Character of Female.*—In prosecutions for rape and kindred crimes, where nonconsent is an element, the character of the female for chastity may be impeached, by proof of general reputation, but not by proof of particular acts of unchastity.

4. *Same.*—Where the defendant is a negro, and the prosecuting witness a white woman, and admittedly a prostitute, it was competent to show that she had the reputation of having practiced lewdness with negroes, to negative the prevalent idea that white women, though prostitutes, will not suffer the embraces of negroes.

5. *Same.*—General reputation for unchastity of the prosecuting female, in case of rape, is admissible only on the idea of negativing the essential element of nonconsent, and not for the purpose of affecting her credibility as a witness, otherwise.

6. *Same.*—The reputation of a white woman for unchastity does not embrace a reputation for lewdness with negroes of the opposite sex.

7. *Same; Res Gestae.*—What the person said at the time of the commission of the offense with which he was charged is a part of the res gestæ, and admissible as such.

8. *Witnesses; Impeachment.*—Evidence of the general character of a witness is admissible for the purpose of affecting his credibility as a witness.

9. *Judgment; Amendment or Correction.*—Where the bench notes of the trial judge showed the verdict of guilt and fixed the punishment, and sentence was entered in conformity therewith the failure of the judgment entry to recite the punishment could be corrected nunc pro tunc after the expiration of 30 days from the judgment and sentence, and at a subsequent term of the court.

APPEAL from Tuscaloosa County Court.

Heard before Hon. HENRY B. FOSTER.

Clarence Story was convicted of carnally knowing a woman against her will, and he appeals. Reversed and remanded.

MCKINLEY, MCQUEEN, HAWKINS and SNOW, for appellant. The brief on original submission did not reach the reporter. On rehearing counsel insist that to give the statute the construction contended for by the State would be to eliminate therefrom the words, "without her consent," and this the courts will not do.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General and C. B. VERNER, Solicitor, for the State. The testimony offered to show the character and general reputation of the prosecutrix was improper, as it involved particular acts or conduct. —76 Ala. 9; 83 Ala. 20; 85 Ala. 336; 87 Ala. 121; 108 Ala. 54; 109 Ala. 14.

MCCLELLAN, J.—The indictment contained two counts; the first charging rape of Beatrice McClure, and the second charging the violation of the following penal statute (Code, § 7698): "Carnal knowledge of women by administering drug, etc.—Any person who

has carnal knowledge of any woman above fourteen years of age, without her consent, by administering to her any drug or other substance which produces such stupor, imbecility of mind, or weakness of body, as to prevent effectual resistance, must, on conviction, be punished at the discretion of the jury, by death or by imprisonment in the penitentiary for not less than ten years." The conviction was under the second count only.

The copy of the indictment served upon the defendant differed from the original indictment in this: "Has" was substituted for "had" preceding the word "carnal," and "of" was substituted for "or" between the words "drug" and "substance." The differences were not material. It was not possible for any one to be misled in respect of the charge intended to be, and that was, laid in the second count. No injury or prejudice attended the merely clerical errors shown by the substitutions stated.—Code, § 6264; *Rigsby v. State,* 152 Ala. 9, 44 South. 608.

The motion to quash the venire on this account was properly overruled.

The demurrer to the indictment because the copy served was different from the original was, obviously, wholly inapt. If the variance, between the original indictment and copy, had been material, the only effect would have been to continue the trial till the *requisite* service of a correct copy could have been made; the sufficiency of the copy and service of the venire proper being, as appears, unquestionable.

In prosecutions for rape, and in kindred proceedings, where nonconsent is an element of the offense, in which the chastity of a woman may be brought into question, the character of the woman for chastity may be impeached; but this is usually done by evidence of her

reputation in that respect, and not by proof of particular acts of unchastity.—*Boddie v. State*, 52 Ala. 395; *McQuirk v. State,* 84 Ala. 485, 4 South. 775, 5 Am. St. Rep. 381; *Griffin v. State,* 155 Ala. 88, 46 South. 481. In other jurisdictions the rule is different; the courts holding that the substantive fact of unchastity may be shown, not only by general reputation therefor, but by evidence of particular acts. See *State v. Patterson,* 88 Mo. 88, 57 Am. Rep. 374; 10 Ency. of Evi. pp. 602-605; *People v. Abbott,* 19 Wend. (N. Y.) 192; *State v. Jefferson,* 28 N. C. 305. The view to which this court long ago gave its approval, as stated, found its chief support in 3 Green, on Evi. § 214, where that learned author said: *"The character of the prosecutrix for chastity* may also be impeached; but this must be done by general evidence of her reputation in that respect, and not by evidence of particular instances of unchastity. Nor can she be interrogated as to a criminal connection with any other person, except as to her previous intercourse with the prisoner himself; nor is such evidence of other instances admissible."

We are not disposed to enter, at this late day, upon a reinvestigation of the soundness of the general rule thus accepted by this court. The theory of the rule is that the essential (to the offense) fact of nonconsent of the woman to intercourse with the defendant may be negatived by evidence of general reputation for unchastity—a condition that argues the consent of the woman to meretricious intercourse with the defendant.

The woman here confessed that she had, for some time, pursued the vocation of a prostitute. She is a woman of the Caucasian race. The defendant is a negro. The defendant sought to show that the woman bore the reputation of having practiced her lewdness with negroes; and, also, that on one occasion in a neigh-

boring state she was caught in bed with a negro other than the defendant. The court disallowed both characters of this evidence; evidently, in consequence of the application of the rule which we have stated as long prevailing in this state. Bound as the trial courts are by the pronouncements of this court in respect of matters before them, it should be in justice said that in this instance the trial court may be conceded to have had in the *Boddie* and *McQuirk Cases, supra,* support, in declaration of general principle and in the illustrations thereof afforded by decisions of this court for the rulings mentioned. With respect to the stated effort to show particular conduct of the woman in a neighboring state, there can be, under the prevailing rule, no doubt of the correctness of the court's action. With respect to the matter of her reputation for prostitution among negroes, we have, after full consideration, reached a different conclusion. We think the proffered testimony to that effect should have been received.

As affecting the *credibility* of a witness, evidence in chief may be taken of the general character of the witness; but, while the notorious want of chastity in a female would of course blight her reputation and destroy confidence in her virtue in any respect, yet her general reputation for unchastity cannot be inquired into in order to reflect upon her *credibility* as a witness; for that would result in the original investigation of the *cause* of her repute, which is not permissible.—*Holland v. Barnes,* 53 Ala. 83, 25 Am. Rep. 595; *Birmingham Ry. Co. v. Hall,* 90 Ala. 8, 11, 8 South. 142, 24 Am. St. Rep. 748; *McInerny v. Irvin,* 90 Ala. 275, 7 South. 841; *Swint v. State,* 154 Ala. 46, 45 South. 901. So, the admissibility of the testimony now under consideration is to be referred to its office tending to negative the nonconsent of the woman to meretricious in-

tercourse with the defendant (if such there was), and not to an effect reflecting upon her *credibility* as a witness.

The social status, as respects the white race and the negro race, in this state is universally known. The general relation of the races, each toward the other, is kind and cordial to a most marked and gratifying degree; and the impulse the dominant race manifests toward the inferior race is that of a commendable guardianship and abundant generosity, inspired by motives not only of fundamental justice but of sentiment engendered by the earlier legal dependence and subjection of the slave to the master. While this honorable condition is obvious and prevails, yet the social relation and practices of the races have, in the interest of our civilization as well as in expression of the natural pride of the dominant Anglo-Saxon race and of its preservation from the degeneration social equality, between the races, would inevitably bring, imperatively necessitated and created immutable rules of social conduct and social restraint, that the just ends indicated might be attained and permanently maintained. Since the fundamental, initial suggestion of the social separation of the races is conceived in nature and is nurtured by a social pride and self-respect that only ignorance or unholy purpose can question or assail, it was and is the natural result that laws should be enacted promotive of the social purpose of the dominant race. Among these are: The inhibition against the authorization or legalization of marriage between any white person and a negro, or the descendant of a negro (Const. §§ 102, 182); the penal prohibition of marriage between these races (Code, §§ 7421, 7422); and the statute-imposed separation of the races in public schools and in the cars of carriers of passengers in this state (Code, §§ 1757,

5487). The civilization adhering to and fostering such purposes visits upon those who practice immoral conduct, across the barrier, between these races, a severer condemnation than is visited upon those who, of the same race, practice a like moral violation. Whether such a distinction, in the two cases, is morally tenable, is not a question of presently important concern in the matter under consideration. It is the *fact* of the severer condemnation in the one case than in the other of which in the administration of justice we feel constrained to take account, and not of its justification, morally or otherwise. From this status of social relation between the races—the civilization in which we live—we know, as all do, that a universal public opinion, prevalent in both races, recognizes at least two grades of depravity among those women of the white race who make commerce of their virtue. Deeply depraved as are those white women who practice prostitution among members of their own race, those few white women (if such there be) who may practice their lewdness among negroes are yet lower in the scale of depravity—are yet beneath those who entirely forfeit respect by the barter of their very characters. Reclamation may be made of one; but, for the other, there is little, if any, hope. It is inevitable from this fact that, though a white woman be a prostitute, the presumption is strong, nearly conclusive, among both the races, that she will not yield—has not yielded—even in her confirmed depravity, to commerce with a negro charged with an offense against her person. The consensus of public opinion, unrestricted to either race, is that a white woman prostitute is yet, though lost of virtue, above the even greater sacrifice of the voluntary submission of her person to the embraces of the other race.

This leads us to the conclusion that the reputation

of a white woman for unchastity in cases where her nonconsent to the meretricious intercourse is essential to the inquiry of guilt laid against one of the negro race, does not comprehend a reputation for the practice of her lewdness with members of the negro race. That practice, if sufficient to invite a *reputation* therefor, affords the basis of a *reputation* for a character of unchastity distinct from that afforded by prostitution among members of the prostitute's own race. And if such a *reputation* for that character and degree of prostitution, is found to exist, the natural and legitimate effect is to negative the prevalent notion that the white woman has not volutarily yielded to the embraces of the accused negro.

There was therefore prejudicial error in declining to allow the defendant to submit to the jury, for their consideration on the issue of nonconsent, imported in the charge stated in the second count, the proffered testimony of witnesses called to show (if qualified to that end) that Beatrice McClure, a white woman, had the *reputation* of having practiced her prostitution among members of the negro race.

What the defendant said upon the occasion in question was of the res gestæ, and was hence properly admitted in evidence.

The jury's verdict adjudged the accused guilty of carnal knowledge, etc., under the second count of the indictment. The original judgment entry, pronouncing the guilt of the accused, omitted the recital of that part of the verdict fixing the punishment at 35 years in the penitentiary. The sentence imposed by the court conformed, however, to the term expressed in the verdict. The bench notes made by the trial judge showed a verdict of guilty and the fixing therein of the stated term of imprisonment. More than 30 days after ver-

dict and judgment, the solicitor moved the amendment nunc pro tunc of the record so as to conform to the written evidence of the *correct* verdict returned by the jury. This the court allowed, and so amended its record to consist with the truth.

Such an amendment of a judicial record may, if the character and degree of the evidence justifies it, be made at a subsequent term.—*Marks v. State,* 135 Ala. 69, 33 South. 657. The bench notes, made by the trial judge upon the occasion on the trial docket against the case thereon docketed, is the competent and best evidence of the essential fact to support such an amendment nunc pro tunc.—*Kuehlthau v. State,* 92 Ala. 91, 9 South. 394. The action of the court was proper.

For the error indicated, the judgment is reversed, and the cause is remanded.

Reversed and remanded. All the Justices concur.