(75 South. 479)

PARKER v. NEWMAN. (7 Div. 829.)

(Supreme Court of Alabama. Feb. 1, 1917. On Rehearing, June 11, 1917.)

1. HUSBAND AND WIFE ⬅➡332—ALIENATION OF AFFECTIONS—COMPLAINT—SUFFICIENCY.

In an action for the alienation of the affections of plaintiff's husband, a complaint, alleging "plaintiff * * * claims of the defendant * * * the sum * * * as damages, and avers that the defendant, on sundry dates beginning on or about the 7th day of January, 1915, contriving, wrongfully, wickedly, and unjustly intending to injure the plaintiff, and to deprive her of the comfort, fellowship, and assistance, support, and protection of her husband, and to alienate and destroy his affections for the plaintiff, wrongfully, wickedly debauched and carnally knew the plaintiff's husband, * * * and thereby alienated and destroyed the plaintiff's said husband's affection for her, and caused the plaintiff to be deprived of her husband's fellowship, society, aid, and assistance, which she should and would have had but for the wrong committed by the defendant, and plaintiff avers that in addition to the foregoing, by reason of the said wrongs committed by the defendant, she has been degraded among her acquaintances and has suffered great mental anguish, shame, and mortification, all to her damage as aforesaid," was sufficient statement of the right of action.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1123.]

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

2. HUSBAND AND WIFE ⬥⟳332—ALIENATION OF AFFECTIONS — SPECIAL PLEA — GENERAL ISSUE.

Defendant had the benefit, under the general issue of matter sought to be specially pleaded, that the plaintiff and her husband are still living together and copulating and have been doing so all the while, thus condoning the offense complained of.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1123.]

3. CONTINUANCE ⬥⟳15—FAILURE TO ANSWER INTERROGATORIES—DISCRETION OF COURT.

Where trial was reached on the thirtieth day after interrogatories, during which the plaintiff had to answer interrogatories before she was in default, the court committed no error in overruling defendant's motion for a continuance on the ground that the interrogatories were unanswered, as it was a matter of discretion with the trial court as to requiring the trial to proceed on the day the same was reached.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. §§ 36, 37.]

4. HUSBAND AND WIFE ⬥⟳325—ALIENATION OF AFFECTIONS—RIGHT OF WIFE TO SUE.

The fact that Code 1907, § 2466, gives right of action to the husband for adultery or criminal conversation with the wife is no denial to the wife of a right of action for alienation of the husband's affection, if that right otherwise existed.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 36, 37.]

5. HUSBAND AND WIFE ⬥⟳325—ALIENATION OF AFFECTIONS—RIGHT OF WIFE TO SUE.

In view of Code 1907, § 4493, providing that the wife may sue alone upon all contracts made by her or with her, or for the recovery of her separate property, or for injuries to such property, or for its rents, etc., or for all injuries to her person or reputation, and section 4489, providing that all damages which the wife may be entitled to recover for injuries to her person or reputation is her separate property, it being apparent that the legislative intent was to give the wife the right of action in such matters that had been accorded her husband, the violation of a woman's marital rights being a violation of her personal rights she may sue for the alienation of her husband's affections.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1119.]

6. HUSBAND AND WIFE ⬥⟳348, 349—CRIMINAL CONVERSATION—PROOF—DAMAGES.

In suit by the wife for criminal conversation with her husband, proof of two facts is essential to her recovery, marriage and adultery, and damages for adultery or criminal conversation may include compensation for mental suffering of the husband or wife whose marital rights are thus violated.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1132–1134.]

7. HUSBAND AND WIFE ⬥⟳333(2)—ALIENATION OF AFFECTIONS—EVIDENCE—ADMISSIBILITY.

In an action for the alienation of the affections of plaintiff's husband, the admission of a list containing the dates on which plaintiff had seen her husband with the defendant was not error, as it was only incidental to the matter in issue.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1124.]

8. WITNESSES ⬥⟳274(1)—CROSS-EXAMINATION—CHARACTER WITNESS.

A witness having testified to the defendant's general reputation in the community where she lived was properly permitted, on cross-examination, to be asked if he knew "anything about her reputation out in the country since she moved," for the purpose of testing the sincerity or the knowledge of the witness.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 965.]

9. WITNESSES ⬥⟳372(1) — IMPEACHMENT — INTEREST OR BIAS.

The trial court committed no error in permitting witness to answer the questions tending to test her interest or bias.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1192, 1197, 1199.]

10. HUSBAND AND WIFE ⬥⟳333(8)—ALIENATION OF AFFECTIONS — EVIDENCE — RELEVANCY.

The terms upon which the husband and wife lived together before the acts complained of are relevant.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1124.]

11. HUSBAND AND WIFE ⬥⟳333(8)—ALIENATION OF AFFECTIONS — EVIDENCE — RELEVANCY.

Evidence that the husband and wife had had domestic trouble a number of years before the action was brought, although not presumed to have continued to the time of trial, and although remote was competent as it might tend to mitigate damages, and its exclusion was reversible error.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1124.]

12. WITNESSES ⬥⟳349—CROSS-EXAMINATION.

Where the testimony of a witness tended to show that no improper relation subsisted between plaintiff's husband and defendant and to explain their being together, it was permissible on cross-examination to test the witness' statements by asking him if he had not tried to induce the defendant to "quit going with" the plaintiff's husband.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1135–1139.]

13. HUSBAND AND WIFE ⬥⟳333(2)—WITNESSES ⬥⟳336—ALIENATION OF AFFECTIONS—EVIDENCE—CROSS-EXAMINATION.

Although in civil case especially, character evidence pertaining to the litigants is usually excluded, when the character of the person is one of the many facts in issue, evidence of such fact is admissible, so that, in an action for the alienation of the affections of plaintiff's husband, defendant was properly permitted to introduce evidence of her general character, as an evidential fact; and by becoming a witness in her own behalf she put her general character for truth and veracity in issue.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1124; Witnesses, Cent. Dig. § 1112.]

14. WITNESSES ⬥⟳338 — IMPEACHMENT — CHARACTER EVIDENCE.

Character evidence of a party to a litigation and character evidence of a witness for veracity are so separate and distinct that they should be carefully distinguished, and in the former case character is a fact in issue or an evidentiary fact to the fact in issue, but in the latter case it is neither, but merely a fact which comes into the case in a collateral way and does not pertain to the truth or veracity of the issue being tried, but merely to the weight of the evidence of the particular witness.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1114, 1115, 1118.]

⬥⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**15. WITNESSES ⊙⊃355 — IMPEACHMENT — CHARACTER.**

When the veracity of a witness is sought to be impeached, the impeaching or sustaining witness must have knowledge of the general reputation or character of the witness sought to be impeached in the community or neighborhood in which the latter resides.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1154–1156.]

**16. WITNESSES ⊙⊃338, 345(1), 347, 380(1)— IMPEACHMENT—CHARACTER—CONTRADICTORY STATEMENTS.**

When in a civil case a party thereto testifies, he is open to impeachment by its being shown that he has been convicted of a crime involving moral turpitude, or that he has made contradictory statements, or that his conduct has been such as to contradict his testimony, or that he is a person bearing a bad reputation or character.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1114, 1115, 1118, 1126, 1134, 1210, 1219.]

**17. WITNESSES ⊙⊃338 — IMPEACHMENT — CHARACTER.**

In impeaching the credibility of a witness, the inquiry is not limited to the general reputation in the community or neighborhood in which such witness lives or is known for truth and veracity, but extends to the witness' general character.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1114, 1115, 1118.]

**18. HUSBAND AND WIFE ⊙⊃333(2)—ALIENATION OF AFFECTIONS—CHARACTER EVIDENCE —ADMISSIBILITY.**

Where defendant had put her good character in issue as an evidentiary fact and as a witness, plaintiff could reply by like testimony touching character up to the time of the occurrences on which the suit was based.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1124.]

**19. APPEAL AND ERROR ⊙⊃1056(1)—REVIEW— REVERSIBLE ERROR.**

Although as a general rule matter may be elicited on cross-examination to show the nature and extent of the witness' bias or interest as to the parties or as to the issue, in an action for the alienation of the affections of plaintiff's husband, where a witness' testimony that defendant and plaintiff's husband had been together was but corroborative of disinterested witnesses, and he admitted his interest in plaintiff's behalf, the exclusion of a letter written by the witness to plaintiff's husband, which tended to show bias on part of witness only if plaintiff's husband made the statement inquired of, was not reversible error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4187, 4191, 4207.]

**20. WITNESSES ⊙⊃286(1) — EXAMINATION — REDIRECT.**

Where the husband had testified in regard to an entry in his diary, plaintiff was properly allowed to state on redirect examination that after she had seen the entry in her husband's diary, referring to defendant and called her husband's attention thereto, he changed or erased the entry.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 930, 994.]

**21. TRIAL ⊙⊃253(8) — INSTRUCTIONS — APPLICABILITY TO ISSUES.**

A requested instruction, "If the alleged wrongs are the result of the conduct of [plaintiff's husband], then your verdict should be for the defendant," was properly refused, as it pretermitted the wrongful conduct of the defendant with plaintiff's husband.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 620.]

**22. TRIAL ⊙⊃267(1)—INSTRUCTIONS—EXPLANATION OF REQUEST.**

A requested instruction, "If the alleged wrongs of the plaintiff are the result of misconduct of [plaintiff's husband], and not of the defendant, then your verdict should be for the defendant" was properly explained by the statement of the court, "Of course if the wrongs which she complains of, gentlemen, are the result of the misconduct of [plaintiff's husband], and not—and that misconduct is not connected with anything charged in the complaint here, that misconduct of [plaintiff's husband] isn't any part of the misconduct charged here on account of illicit relationship with [defendant], then the plaintiff would not be entitled to recover."

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 668–671.]

**23. HUSBAND AND WIFE ⊙⊃326—ALIENATION OF AFFECTIONS—DEFENSES.**

Even though the plaintiff and her husband were, at the time of the trial, living together as man and wife, this fact alone would not defeat her right of recovery for defendant's willful violation of plaintiff's marital rights.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1120.]

**24. HUSBAND AND WIFE ⊙⊃335—ALIENATION OF AFFECTIONS—INSTRUCTIONS.**

A requested instruction, "If the plaintiff and her husband are 'now' living together as husband and wife, then the jury may take this in mitigation of damages" was properly refused, as misleading in the use of the word "now."

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1126.]

**25. HUSBAND AND WIFE ⊙⊃325—ALIENATION OF HUSBAND'S AFFECTIONS — RIGHTS OF WIFE.**

As long as a wife keeps her marriage contract, she has the right to the conjugal affection, society, and aid of her husband, freed from the adultery and criminal conversation of other women with him, with the knowledge of his being at the time a married man.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1119.]

### On Rehearing.

**26. HUSBAND AND WIFE ⊙⊃333(8)—ALIENATION OF AFFECTIONS—EVIDENCE — COMPETENCY.**

A question asked plaintiff as to whether she had procured a third person to move her from her husband's home, and whether she had said to him that her husband had just taken up with one A., not the defendant, that he had broken plaintiff's heart over it, and that plaintiff could never love him any more, that he was continually cursing her, and that he had cursed her that day, and told her to get out of the house, so that he could move the other woman in, was competent for the purpose of reducing the amount of damages.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1124.]

**27. WITNESSES ⊙⊃330(2) — IMPEACHMENT — COMPETENCY OF TESTIMONY.**

The testimony sought to be introduced was also competent as a predicate for the purpose of contradicting the plaintiff.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1107.]

⊙⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**28. APPEAL AND ERROR** ☞1052(2)—REVIEW— CURE OF ERROR.

Plaintiff's testimony that her husband got mixed up with some D. woman, or some other woman, and that plaintiff could not love him any more, that she did not leave on that occasion on account of any woman, that she stayed away from him for six months, that he came after her, and that she did not send for him, did not cure the error in sustaining an objection to plaintiff's testimony as to her statements of her husband's relations with Mrs. A.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4172.]

**29. HUSBAND AND WIFE** ☞333(5)—ALIENATION OF AFFECTIONS — EVIDENCE—CONDUCT OF HUSBAND.

As the source of the alienation of the husband's affections was the important issue, refusal to allow plaintiff to answer the question concerning her husband's association with Mrs. A., and the fact that her husband was continually cursing her because of his desire to bring Mrs. A. into his home, was reversible error.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1124.]

Appeal from Circuit Court, Calhoun County; Hugh D. Merrill, Judge.

Action by Artie Newman against Carrie Parker, for damages for alienating the affections of her husband. Judgment for plaintiff, and defendant appeals. Transferred from the Court of Appeals under section 6, Act of April 18, 1911, p. 449. Reversed and remanded.

The complaint was as follows:

"Plaintiff * * * claims of the defendant * * * the sum * * * as damages, and avers that the defendant, on sundry dates, beginning on or about the 7th day of January, 1915, contriving, wrongfully, wickedly, and unjustly intending to injure the plaintiff and to deprive her of the comfort, fellowship, and assistance, support, and protection of her husband, and to alienate and destroy his affections for the plaintiff, wrongfully, wickedly debauched and carnally knew the plaintiff's husband, Olin Newman, and thereby alienated and destroyed the plaintiff's said husband's affection for her, and caused the plaintiff to be deprived of her husband's fellowship, society, aid, and assistance, which she should and would have had but for the wrong committed by the defendant. And plaintiff avers that in addition to the foregoing, by reason of the said wrongs committed by the defendant, she has been degraded among her acquaintances, and has suffered great mental anguish, shame, and mortification, all to her damage as aforesaid."

The defense set up by the special pleas was that the plaintiff and her husband are still living together and copulating and have been doing so all the while, thus condoning the offense complained of.

Defendant filed interrogatories to the plaintiff on October 18, 1915, and the trial was entered upon on November 17, 1915, at which time defendant moved for a continuance because of the failure of plaintiff to answer the same.

Objections to testimony sufficiently appear from the opinion.

The following charges were refused to the defendant:

(1) "If the conduct of the defendant has not alienated the affections of the husband of the plaintiff, then your verdict should be for the defendant."

(2) "If the plaintiff has not lost the companionship nor aid nor society of her husband by reason of the conduct of the defendant, then your verdict should be for the defendant."

(3) Same as 2.

(4) "If the alleged wrongs are the result of the conduct of Olin Newman, then your verdict should be for the defendant."

(5) "If the plaintiff and her husband are now living together as husband and wife, then the jury may take this in mitigation of damages."

(6) "If the jury reasonably believe that the plaintiff and her husband are still living together as husband and wife and copulating together as such, then the verdict should be for the defendant."

(8) "If plaintiff and her husband are still living together as husband and wife, then the verdict should be for the defendant."

(9) "If the alleged wrongs of the plaintiff are the result of the misconduct of Olin Newman, and not of the defendant, then your verdict should be for the defendant."

The court gave this charge, and in doing so said:

"Of course if the wrongs which she complains of, gentlemen, are the result of the misconduct of Mr. Newman, and not—and that misconduct is not connected with anything charged in the complaint here, that misconduct of Newman's isn't any part of the misconduct charged here on account of illicit relationship with Mrs. Parker, then the plaintiff would not be entitled to recover."

S. W. Tate, of Anniston, for appellant. Hugh Walker, of Anniston, for appellee.

THOMAS, J. This action is for the alienation of the affections of appellee's husband.

[1] The complaint was a sufficient statement of the right of action.

[2] Defendant had the benefit, under the general issue, of the matter sought to be specially pleaded.

[3] The court committed no error in overruling defendant's motion for a continuance on the ground that the interrogatories were unanswered. Russell v. Bush, 71 South. 397;[1] Berthold & Jennings Lumber Co. v. Phalin Lumber Co., 71 So. 989;[2] Hass Lumber Co. v. Gibson, 172 Ala. 111, 54 South. 994, Ann. Cas. 1913D, 497. The plaintiff had all of the thirtieth day in which to answer the interrogatories before she was in default.

[4] It was a matter of discretion with the trial court, as to requiring the trial to proceed on the day the same was reached.

Against the right of the wife to sue for damages for alienation of the husband's affections, appellant's counsel cites Farmer v. Farmer, 86 Ala. 322, 5 South. 434, and section 2466 of the Code of 1907. The Farmer Case was for divorce, and the question of condonation of adultery was there discussed. By section 2466 of the Code there is given a right of action to the husband for adultery or criminal conversation with the wife. This, however, is no denial to the wife of a

right of action for alienation of the husband's affection, if that right otherwise existed.

Of her statutory rights, section 4493 of the Code provides that the wife may sue alone at law or in equity, upon all contracts made by her or with her, or for the recovery of her separate property, or for injuries to such property, or for its rents, income, or profits, "or for all injuries to her person or reputation."

And section 4489 of the Code provides that all damages which the wife may be entitled to recover for injuries to her person or reputation is her separate property. It is thus apparent that the legislative intent was to give to the wife the right of action in such matters that had been accorded to the husband. People's Home Tel. Co. v. Cockrum, 182 Ala. 547, 62 South. 86; Town of Elba v. Bullard, 152 Ala. 237, 44 South. 412; Engle v. Simmons, 148 Ala. 92, 41 South. 1023, 7 L. R. A. (N. S.) 96, 121 Am. St. Rep. 59, 12 Ann. Cas. 740; Code, §§ 4486–4504. These statutes are declared to be remedial, and should be construed to effect the purpose of the Legislature. Knight v. Coleman, 117 Ala. 266, 22 South. 974; Hays v. Bowdoin et al., 159 Ala. 600, 49 South. 122.

In Engle v. Simmons, supra, it was held that where the defendant entered the dwelling and by threats, or rude or boisterous conduct, put the wife in fear, she may recover for the personal injury sustained. The court said:

" 'Nor does it matter, in our judgment, that the trespass was committed on property belonging to the husband. It was her home as well as that of her husband, and any unlawful entry or invasion thereof which produced physical injury to her was a wrong for which she ought to recover.' Nor is it important that no physical violence was done her person. * * * The plaintiff here was in her home, and had a right to the peaceful and undisturbed enjoyment of the same, and any unlawful entry or invasion thereof, which produced physical injury to her, whether by direct personal violence, or through nervous excitement the proximate result of the wrongful acts of the defendant, was a wrong for which she is entitled to recover."

Discussing the Engle Case (Spearman v. McCrary, 4 Ala. App. 473, 58 South. 927), Judge Walker said:

"This was a case of a trespass upon the plaintiff's home. The plaintiff there had a right of action because of the trespass, and the question was as to her right to recover damages for physical injury resulting from fright caused by the circumstances of the trespass. * * * The result of our examination of the authorities on the question under consideration and of the reasons advanced to support the conflicting views of different courts is that we reach the conclusion that the complaint was not subject to demurrer because of its failure to show that the plaintiff sustained any physical injury otherwise than the result of fright or mental shock." Birmingham Realty Co. v. Thomason, 8 Ala. App. 535, 63 South. 65.

These cases illustrate the construction given the statute of the wife's right of suit for injuries "to her person."

It is said to be an open question in England whether a wife has a right of action for the deprivation of her husband's society. Clark & Lindell's Torts (6th Ed.) p. 245. However, in Lynch v. Knight, 9 House of Lords Cas. 577, 589 (1861), a majority of the law lords express an opinion in favor of the existence of such a right of action. In the United States, the prevailng view is that the wife may recover for the alienation of the husband's affection, or for criminal conversation with him.

In the leading case (1889) of Foot v. Card, 58 Conn. 1, 18 Atl. 1027, 6 L. R. A. 829, 18 Am. St. Rep. 258, the court said:

"Inasmuch as by universal consent it is of the essence of every marriage contract that the parties thereto shall, in regard to this particular matter of conjugal society and affection, stand upon an equality, we are unable to find any support for the denial in this reason, and the right, the injury, and the consequent damage being admitted, then comes into operation another rule, namely, that the law will permit no one to obtain redress for wrong except by its instrumentality, and it will furnish a mode for obtaining adequate redress for every wrong. This rule, lying at the foundation of all law, is more potent than, and takes precedence of, the reason that the wife is in this regard without the pale of the law because of her inferiority."

In Wolf v. Frank, 92 Md. 138, 142, 48 Atl. 132, 52 L. R. A. 102, the cases are collected, as authority for the several grounds on which is rested the right of the wife to sue for such torts committed against her marital rights.

Most of the American courts have asserted this equality of husband and wife in the right to conjugal affection, society, and aid; and where the right of action is not sustained in her on the theory of the policy of the law to afford a remedy wherever an injury has been suffered, the right is based upon the statutes of removal of disabilities of the married woman. 1 Standard Enc. of Pr. 771 (3), note 7, where the authorities are collected from all the states.

In Keen v. Keen, 49 Or. 364, 90 Pac. 147, 10 L. R. A. (N. S.) 504, 14 Ann. Cas. 45, and Beach v. Brown, 20 Wash. 266, 55 Pac. 46, 43 L. R. A. 114, 72 Am. St. Rep. 98, this right was held to exist, and to be maintainable by the wife though she has divorced the husband; and in Foot v. Card, supra, and 1 Cooley's Torts (3d Ed.) p. 479, though the husband has not separated himself from her. In Holmes v. Holmes, 133 Ind. 386, 32 N. E. 932, it was held that the alienation of the affections of a woman's husband being a violation of her personal rights, she may sue therefor in her own name, under Revised Statutes 1881, § 5131, providing that "a married woman may sue in her own name for an injury to the person." Some of the statutes, held to confer on the wife this right of suit for alienation contain the expression, "for any violation of her personal rights." Clow v. Chapman, 125 Mo. 101, 28 S. W. 328, 26 L. R. A. 412, 46 Am. St. Rep. 468; Seaver v. Adams, 66 N. H. 142, 19 Atl. 776, 49 Am. St. Rep. 597.

In 1 Jaggard on Torts, p. 468, the author collects the authorities to support the view that in natural justice no reason exists why the wife may not maintain an action against the seducer of her husband, and that her right of action against such seducer is "coextensive with his right of action against her seducer," and that "the weight of authorities and the tendency of legislation strongly incline to 'the latter opinion."

In a note to the second edition of Cooley's Torts, § 228, the author sees "no reason why such an action should not be supported, where, by statute, the wife is allowed, for her own benefit, to sue for personal wrongs suffered by her; and it is held that she may maintain an action in her own name for alienating the husband's affections and causing a separation. Breiman v. Paasch, 7 Abb. N. C. (N. Y.) 249; Warner v. Miller, 17 Abb. N. C. (N. Y.) 221; Jaynes v. Jaynes, 39 Hun, 40; Mehrhoff v. Mehrhoff (C. C.) 26 Fed. 13." And in the third edition of Cooley's Torts, pp. 475, 476, 480, it is stated that at least 20 states now hold that such an action may be maintained, some basing their conclusions upon common-law principles and some more or less upon the various enabling statutes in favor of married women which have been passed in recent years; and that the courts of only 5 states hold that the action will not lie. Mr. Bigelow (Torts, 153) said:

"To entice away, or to corrupt the mind and affections of one's consort is a civil wrong for which the offender is liable to the injured husband or wife."

See, also, on this question, 21 Cyc. 1618; 3 Mod. Am. Law, 315; Humphrey v. Pope, 122 Cal. 253, 54 Pac. 847; Westlake v. Westlake, 34 Ohio St. 621, 32 Am. Rep. 397; Baker v. Baker, 16 Abb. N. C. (N. Y.) 293; Bennett v. Bennett, 116 N. Y. 584, 23 N. E. 17, 6 L. R. A. 553; Betser v. Betser, 186 Ill. 537, 58 N. E. 249, 52 L. R. A. 630, 78 Am. St. Rep. 303.

[5] On this authority, and under our statute, it is clear that the violation of a woman's marital rights is a violation of her personal rights, and that a right of action therefor is secured to her in this state. In Stark v. Johnson, 43 Colo. 243, 95 Pac. 930, 16 L. R. A. (N. S.) 674, 127 Am. St. Rep. 114, 15 Ann. Cas. 868, it is pertinently remarked, touching the proof necessary to sustain such an action, that although it is usual to allege the seduction of the wife and the consequent alienation of her affection, proof of such alienation is not necessary to the husband's right of action. Evidence of such matters is admissible as affecting the aggravation of the offense and the amount of damages to which the plaintiff is entitled. "The essential injury to the husband consists in the defilement of the marriage bed." 8 Am. & Eng. Ency. Law, p. 268, § 5; Bigaouette v. Paulet, 134 Mass. 123, 45 Am. Rep. 307; Yundt v. Hartrunft, 41 Ill. 9.

[6] So in suit by the wife for criminal conversation with her husband, proof of two facts is essential to her recovery, viz:, marriage and adultery. And damages for adultery or criminal conversation may include compensation for mental suffering of the husband or wife whose marital rights are thus violated. Long v. Booe, 106 Ala. 570, 17 South. 716; Prettyman v. Williamson, 1 Pennewill (Del.) 224, 39 Atl. 731; Smith v. Meyers, 52 Neb. 70, 71 N. W. 1006; Cross v. Grant, 62 N. H. 675, 13 Am. St. Rep. 607; Speck v. Gray, 14 Wash. 589, 45 Pac. 143.

[7] The plaintiff prepared a list containing the dates when she saw her husband with the defendant, and she testified that the same was correct. No error was committed by allowing its introduction as evidence. It was only incidental to the matter in issue. Mobile, J. & K. C. R. R. Co. v. Hawkins, 163 Ala. 565, 51 South. 37; Street v. Nelson, 67 Ala. 504.

[8] The witness Howell, having testified to the defendant's general reputation in the community where she lived, was properly permitted, on cross-examination, to be asked if he knew "anything about her reputation out in the country since she moved," for the purpose of testing the sincerity or the knowledge of the witness. McCutchen v. Loggins, 109 Ala. 457, 19 South. 810; 5 Jones on Ev., 257.

[9] The trial court committed no error in permitting witness Walker to answer the questions tending to test her interest or bias. Patton v. State, 72 South. 401;[3] A. G. S. R. R. Co. v. Johnston, 128 Ala. 283, 29 South. 771. The subsequent question denied by the court was practically answered in the preceding question, which assumed the existence of the same facts.

[10] The terms upon which the husband and wife lived together before the adultery, criminal conversation, or seduction are relevant to the issue. Long v. Booe, supra; 1 Greenl. Ev. 162a–c.

[11] The fact that the husband and wife had had domestic trouble a number of years before the action was brought cannot be made the basis of a presumption that this discord continued to the time of the trial, and especially, in view of the testimony to the effect that plaintiff and her husband were living together happily before plaintiff's husband knew the defendant. So long as the husband or the wife keeps the marriage contract the right to the conjugal aid, society, and affection of the other life partner exists. Though lost for a time, such privilege may be regained; and this is a valuable right that no third person may knowingly violate with impunity. Foot v. Card, supra. The defendant sought to lay a predicate, as to the past declarations of plaintiff, of her affection for her husband. The question propounded to plaintiff as a witness, and to Mr. Burgess, was competent, as tending to show "the terms upon which the husband and wife lived together before the seduction," for the purpose of reducing damages. The evidence was of-

[3] 197 Ala. 180.

fered without restriction; however, the objection thereto was specific.

Although the conversation sought to be inquired about was remote and before plaintiff's husband knew the defendant, yet it was competent, as it might tend to minimize the damages. For the exclusion of this testimony the judgment must be reversed and the cause remanded. We cannot say that the error of its exclusion was cured by permitting defendant to show by other witnesses and Burgess the fact inquired about; that is, the fact of jealously, on the part of the wife, of the woman inquired about.

[12] There was no error committed in the cross-examination of witness J. H. Heath. His testimony tended to show that no improper relation subsisted between plaintiff's husband and Mrs. Parker, and to explain their being together on the occasions detailed by witness. It was permissible to test the witness' statements by asking him if he had not tried to induce the defendant to "quit going with" the plaintiff's husband.

There are many assignments of error on questions of impeachment of the defendant.

[13] In civil cases especially, character evidence pertaining to the litigants is usually excluded. When, however, from the nature of the case, the character of the person is one of the many facts in issue, evidence of such fact is admissible. For example, in an action for libel or slander, the injury to the plaintiff's character is the gist of the action, and in actions for seduction or criminal conversation, chastity is a main fact in issue. Evidence of such general reputation is therefore relevant.

The defendant was properly permitted to introduce evidence of her general character, as an evidential fact; and by becoming a witness in her own behalf she put her general character for truth and veracity in issue.

[14] Character evidence of a party to a litigation and character evidence of a witness for veracity are so separate and distinct that they should be carefully distinguished. Smith v. State, 72 South. 316.[4] In the former case, character is a fact in issue or an evidentiary fact to the fact in issue. In the latter case it is neither, but merely a fact which comes into the case in a collateral way. It does not pertain to the truth or veracity of the issue being tried, but merely to the weight of the evidence of the particular witness. Hughes on Ev. p. 43, § 9.

[15] When the veracity of a witness is sought. to be impeached, the impeaching or sustaining witness must have knowledge of the general reputation or character of the witness sought to be impeached in the community or neighborhood in which the latter resides. Haley .v. State, 63 Ala. 83; Sullivan v. State, 66 Ala. 48; McQueen v. State, 108 Ala. 54, 18 South. 843; Baer & Co. v. M. C. & B. M. Co., 159 Ala. 491, 49 South. 92; 5 Jones on Ev. p. 257.

[16] When in a civil case a party thereto testifies, he is open to impeachment, by its being shown that he has been convicted of a crime involving moral turpitude, or' that he has made contradictory statements, or that his conduct has been such as to contradict his testimony, or that he is a person bearing a bad reputation or character. Smith v. State, 72 South. 316;[4] Carpenter v. State, 193 ˋAla. 51, 69 South. 531; Thompson v. State, 100 Ala. 70, 14 South. 878; 5 Jones on Ev. §§ 845, 859.

[17] In impeaching the credibility of a witness, the inquiry is not limited to the general reputation, in the community or neighborhood in which such witness lives or is known, for truth and veracity, but extends to the witness' general character. Ward v. State, 28 Ala. 53; McCutchen v. Loggins, 109 Ala. 457, 19 South. 810; Rhea v. State, 100 Ala. 119, 14 South. 853; Crawford v. State, 112 Ala. 1, 21 South. 214; Story v. State, 178 Ala. 98, 59 South. 480; Davenport v. State, 85 Ala. 338, 5 South. 152; Byers v. State, 105 Ala. 31, 16 South. 716; Swint v. State, 154 Ala. 46, 45 South. 901.

[18] The questions of impeachment directed to the several witnesses related to the general reputation of the defendant in the community where she lived. The defendant had put her good character in issue as an evidentiary fact and as a witness, and the plaintiff could reply by like testimony touching character up to the time of the occurrences on which the suit was based. Thereafter plaintiff's impeaching evidence should have been limited to the issue of the truth and veracity of the defendant as a witness in her own behalf. On motion of the defendant, the court properly limited this testimony to its effect on the credibility of the defendant as a witness, and no error was committed by the trial court in admitting the character evidence objected to by defendant. Smith v. State, supra.

[19] It is insisted by appellant that the court committed error in refusing to admit in evidence a letter acknowledged by witness McBryde to have been .written by him to plaintiff's husband. It is a general rule that matter may be elicited on cross-examination to show the nature and extent of the witness' bias or interest as .to the parties or as to the issue. Patton v. State, 72 South. 401;[5] A. G.ˋ S. R. R. Co. v. Johnston, supra; Estes v. State, 140 Ala. 151, 37 South. 85. The witness had testified only of the defendant and the plaintiff's husband's being together on different occasions, detailing no evidence of their improper or criminal conduct. The fact that defendant and plaintiff's husband were often together was not denied, and was shown, not only by McBryde, but by many other witnesses who were without bias or interest. The testimony of McBryde was but corroboration of the testimony of these disinterested witnesses. The letter tended to show feeling or bias on the part of McBryde towards Newman, only· in the event that

Newman made the statement inquired of. It is not probable that the jury would have given to McBryde's testimony other consideration than they did, since the witness had admitted his interest in plaintiff's behalf. Had the letter been admitted, the issue being tried would have been confused with the further inquiry whether Newman made the statement inquired about in the letter. We do not think that the case should be reversed on the ground that the letter was not admitted in evidence.

[20] The plaintiff was properly allowed to state, on redirect, that after she had seen the entry in her husband's diary, referring, as it did, to Mrs. Parker, and called his attention thereto, he changed or erased that entry. Plaintiff's husband had testified touching this entry and its change, and plaintiff was permitted to · show that the change was made by Newman under the circumstances detailed.

The authorities we have collected abundantly support the court's statement of the law of the case. The case was properly submitted to the jury under the evidence. The affirmative charge requested by the defendant was properly refused under the evidence, and no error intervened in the court's oral charge.

[21] Defendant's requested charge 4 was properly refused. It pretermitted the wrongful conduct of the defendant with O. A. Newman.

[22] Charge 9 was properly explained, and was not qualified.

[23] Charges 1, 2, 3, 6, and 8 were properly refused. Even though the plaintiff and her husband were, at the time of the trial, living together as man and wife, this fact alone would not defeat her right of recovery for defendant's willful violation of plaintiff's marital rights.

[24, 25] Charge 5 was properly refused. So long as the wife kept her marriage contract, she had the right to the conjugal affection, society, and aid of the husband, freed from the adultery and · criminal conversation of other women with him, with the knowledge of his being at the time a married man. Without condemning the charge as an incorrect statement of the law applicable to such cases, it is sufficient to say that in the form which it presents by the use of the word "now," it was well calculated to mislead the jury; and for that reason, if for no other, it was properly refused.

Reversed and remanded.

McCLELLAN, MAYFIELD, and SOMERVILLE, JJ., concur.

### On Rehearing.

THOMAS, J. The record of the controverted question is as follows: The defendant asked the plaintiff this question:

"In July, 1911, did you get him to move you from your home, your husband's home, near Four Mile, to Anniston, and, while coming here, say this, or this in substance, to him: That Mr. Newman had just taken up with Mrs. Adkins, of Jacksonville, and that he had broken your heart over it, and you couldn't never love him again, and that he was continually cursing you, and had cursed you that day, and told you to get out of the house, so he could move the other woman in?"

The plaintiff objected to this question, on the ground that the, matter was too remote to be inquired into. The court sustained the objection, and to this ruling the defendant duly excepted. Thereupon the defendant called Robert Burgess and asked him the same question, to which the plaintiff objected. The court sustained the objection, and to this, ruling an exception was duly reserved.

[26, 27] The testimony thus sought to be introduced was competent (1) for reducing the amount of damages; and (2) as a predicate for the purpose of contradicting the plaintiff. The effect of the ruling was to say, in the presence of the jury, that the matters embraced in the question were not material to the issue being tried. The defendant was thus denied the right to have the plaintiff's admission or denial of the question, and the effect of having the same brought forward at this stage of the trial, as sought. It is true that, later, Burgess testified:

"I live two miles south of Jacksonville. I have known Mrs. Newman four years. I moved Mrs. Newman to Anniston in 1911 from where she lives now; on the road coming from there here she stated, in substance, that Mr. Newman had taken up with Mrs. Adkins and had broken her heart, and she never could love him any more, and that he had cursed her and told her to get out of the house, so he could bring the other woman in, and she was going back to her 'father, at Fayette, Ala."

Yet Burgess failed to testify that she said her husband "was continually cursing her" and "had cursed you [her] that day," as was also hypothesized in defendant's question to which objection was erroneously sustained.

[28] It is true that, at or near the close of the trial, plaintiff's attorneys were permitted to have plaintiff say in rebuttal:

"I didn't say to Robert Burgess, on the occasion that he moved me to Anniston or any·other occasion, that my husband had got mixed up with some woman, a Dyal woman, or some other woman, that I could not love him any more, and he had broken my heart. I didn't leave him on that occasion on account of any woman. I stayed away from him about six days. He came after me. I did not send for him. I never accused him of being intimate with the Dyal woman."

[29] This, however did not cure the error of sustaining objection to defendant's question, concerning the plaintiff's statement of her husband's relations with Mrs. Adkins, of Jacksonville, of his continually cursing her, and of his having cursed her the day that Burgess moved plaintiff. The source of the alienation of the husband's affection was the important issue being tried. Plaintiff's answer to defendant's question as to the husband's association with Mrs. Adkins and her

alienation of the husband's affection was likewise important; and the fact, if it was a fact, that the husband was continually cursing the wife, and had cursed her the day she moved away, and this abuse was because of his desire to bring the Adkins woman into his and plaintiff's home, was equally pertinent.

The record has been again carefully examined, and we are clearly persuaded that reversible error was committed by the trial court, as we have before indicated.