Sheila Hickey GARVEY, Plaintiff,

v.

DICKINSON COLLEGE, et al., Defendants.

No. CV–88–1924.

United States District Court,
M.D. Pennsylvania.

May 16, 1991.

**800**

Kenneth A. Wise, Harrisburg, Pa., for plaintiff.

Douglas B. Marcello, Thomas, Thomas & Hafer, Harrisburg, Pa., for defendants.

## MEMORANDUM

McCLURE, District Judge.

### I. BACKGROUND

Plaintiff Sheila Garvey alleges in this Title VII action [1] that she was sexually harassed and subjected to gender-based discrimination from 1985 to 1987 while she was employed as a professor of drama at Dickinson College ("Dickinson") in Carlisle, Pennsylvania. In addition to Dickinson, Garvey names as defendants George Allan,

Ph.D., Dean of the College, and David Peck, M.F.A., formerly an Associate Professor of Drama at Dickinson and Garvey's immediate supervisor from 1985 to 1987.[2]

In her amended complaint,[3] Garvey alleges, in addition to the federal cause of action under Title VII (Count I), pendent state claims for (1) intentional and negligent infliction of emotional distress (Count III) and (2) defamation (Count IV).[4] She seeks both compensatory and punitive damages. (Plaintiff's amended complaint, filed January 11, 1989).

In an order entered April 10, 1991, 761 F.Supp. 1175, the court granted summary judgment in defendants' favor on Garvey's claims for defamation and infliction of emotional distress. In a separate order entered contemporaneously with this memorandum and order, the court has reaffirmed that action. 763 F.Supp. 796. Her sole remaining claim is the Title VII claim based on allegations of sexual harassment by Professor Peck and the non-renewal of her teaching contract.

A non-jury trial is scheduled to commence the week of May 28, 1991. Before the court is a motion in limine filed by defendants on February 15, 1991 (Record Document No. 82) in which they seek to preclude the admission of evidence of: (1) alleged sexual harassment by Peck of other persons; (2) alleged sexual harassment at Dickinson perpetrated by individuals other than Peck; (3) the personal lives of Professors Peck, Drake, Villardo, or any other Dickinson employees who testify; (4) privileged information; (5) statistical information about Dickinson's hiring and employment practices; (6) Dickinson's decision to hire Professor Peck and Professor Todd Wronski (plaintiff's successor in the drama department); (7) Dickinson's employee review procedures; and (8) any cause of ac-

---

1. The Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., ("Title VII").

2. This court's order dated January 18, 1991 (Record Document No. 76) dismissed Count II of plaintiff's amended complaint which alleged a violation of 42 U.S.C. § 1983.

3. Record Document No. 6.

4. Although plaintiff's amended complaint contains allegations suggesting that defendants interfered with her prospective contractual relations (Count IV), she has indicated that she did not intend to plead a cause of action on that claim. (Plaintiff's opposing brief, filed December 17, 1990, p. 20)

tion barred by the statute of limitations or the Pennsylvania Workmen's Compensation Act.[5]

Based on the record before us and the arguments advanced by the parties, we will enter an order granting defendants' motion in limine to the extent of the relief provided herein.

## II. DISCUSSION

### 1. *Evidence of other incidents*

Defendants seek to preclude evidence about Peck's alleged harassment of students and other female staff members. They argue that such evidence is not relevant to the issues before the court, and that, in any event, its probative value is outweighed by its prejudicial tendencies. Fed.R.Evid. 402 and 403.

Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 402.

■ In an employment discrimination case, one element of the plaintiff's case is showing that she was intentionally discriminated against in the workplace. To prove that the discrimination was intentional, she must show state of mind. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). State of mind can be proven through circumstantial evidence such as evidence of past conduct or prior incidents. *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 714 n. 3, 715, 103 S.Ct. 1478, 1481 n. 3, 75 L.Ed.2d 403 (1983) and *Krieger v. Gold*

*Bond,* 863 F.2d 1091, 1096–97 (2nd Cir. 1988).

■ Although evidence of character traits or prior wrongs is generally inadmissible to show that a person acted in conformity therewith on a particular occasion, Rule 404 [6] permits the use of such evidence to prove motive or intent. In an employment discrimination case, evidence that, e.g., the defendant has made disparaging remarks about the class of persons to which plaintiff belongs, may be introduced to show that the defendant harbors prejudice toward that group. Such evidence is often the only proof of defendant's state of mind, and if it were excluded, plaintiff would have no means of proving that the defendant acted with discriminatory intent. *Aikens, supra,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1482 ("There will seldom be 'eyewitness' testimony as to the employer's mental processes."); *Hayne v. Rutgers, The State University,* Civil No. 83–4913, slip op. (D.N.J. Aug. 10, 1989) (available on Westlaw at 1989 WL 106031) and *Abramson v. American University,* Civil No. 86–1413, slip op., 1988 WL 152020 (D.D.C. June 13, 1988).

■ Evidence of Peck's alleged harassment of others is clearly relevant because it tends to show his attitude toward women and his treatment of them at the college. See: *Hayne, supra; Abramson, supra;* and *Mullen v. Princess Anne Volunteer Fire Co., Inc.,* 853 F.2d 1130, 1133 (4th Cir.1988) ("The use of racially offensive language by the decisionmaker is relevant as to whether racial animus was behind the membership decision, and was proper evidence for the jury to consider.")

There are, however, limitations to the admissibility of such evidence. Incidents

---

**5.** Our prior ruling on defendants' motion for summary judgment obviates the need to address this issue.

**6.** Rule 404 provides, in relevant part:

Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

.... [Paragraphs (1) and (2) omitted.]

(3) Evidence of the character of a witness, as provided in rules 607, 608 and 609.

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

which are too remote in time or too attenuated from plaintiff's situation are not relevant. *Hayne, supra* (evidence remote in time or relating to alleged discrimination against members of other university departments not admissible) and *Abramson, supra* (scope of trial will be limited to facts relating to discrimination perpetrated against the plaintiff and will not be expanded into a "general examination of every act allegedly taken against every dissatisfied minority member" of the faculty.) We will, therefore, limit evidence of other incidents of sexual harassment to those which involve persons in the drama department.

■ Although the admission of such evidence is also subject to the balancing requirements of Rule 403 (*Mullen, supra,* 853 F.2d at 1133), rulings on Rule 403 admissibility are best made at the time of trial when the court has all relevant considerations before it. *In re Paoli Railroad Yard PCB Litigation,* 916 F.2d 829, 859 (3d Cir.1990) ("[P]retrial Rule 403 exclusions should rarely be granted.... [A] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence.")

### 2. *Evidence of personal life of Dickinson employees*

■ Many details relating to the personal lives of Dickinson employees will have no bearing on issues before the court and will, therefore be excluded. It is impossible in advance of trial to anticipate the full range of questions that counsel may put to a witness during cross-examination. Therefore, the court will not make any blanket ruling precluding such evidence in advance of trial.

### 3. *Dickinson hiring and review practices*

■ In a gender-based discrimination case, evidence about the employer's hiring and review practices is relevant, as is sta-

tistical evidence about the ratio of men to women hired, retained or promoted by the employer, to show that the employer follows a practice of discriminating against women. *Hayne, supra* (defendant university permitted to introduce statistical evidence on the rates of promotion for male and female faculty members to rebut plaintiff's disparate treatment claims). We will, therefore, allow plaintiff to introduce evidence about such practices to the extent that they show discrimination or discriminatory intent.

To the extent that plaintiff seeks to offer evidence of routine procedures for screening applicants, processing applications or reviewing candidates for tenure, such evidence may also be admissible under Rule 406.[7]

### 4. *Privileged matters*

■ Our ruling on defendants' claim that certain information which plaintiff will seek to introduce is privileged because it involves communications to attorneys (42 Pa.C.S.A. § 5928), clergymen (42 Pa.C.S.A. § 5943), and psychologists (42 Pa.C.S.A. § 5944) is best deferred until an offer of proof is made at trial. At that time, the court will have before it all relevant information.

---

**7.** Rule 406 provides:
  Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not, and regardless of the

presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.