Venus D. LONGMIRE, Plaintiff,

v.

ALABAMA STATE UNIVERSITY, et al., Defendants.

Civ. A. No. 91–T–780–N.

United States District Court, M.D. Alabama, N.D.

Dec. 18, 1992.

Rose Sanders, Selma, AL, Susan E. Russ, Miller, Hamilton, Snider & Odom, Montgomery, AL, for plaintiff.

George Beck, John Yung, Dennis R. Pierson, Montgomery, AL, for defendant Howard.

Gregory Stein, Mobile, AL, for ASU & Reed.

Terry G. Davis, Montgomery, AL, for defendants.

Donald Watkins, Montgomery, AL, Joe R. Whatley, Jr., Cooper, Mitch, Crawford, Kuykendall & Whatley, Birmingham, AL, for all defendants other than Howard.

## ORDER

CARROLL, United States Magistrate Judge.

### I. INTRODUCTION

On June 11, 1991, the plaintiff, Venus Longmire, filed this action pro se against

Alabama State University (ASU); Joe Reed, the Chairman of the Alabama State University Board of Trustees; and Leon Howard, a former president of Alabama State. Ms. Longmire alleged that the defendants had violated rights guaranteed her by Title VII of the Civil Rights Act of 1964 and that Dr. Howard had committed a battery upon her, had falsely imprisoned her, had intentionally inflicted emotional distress upon her, and had defamed her. On September 13, 1991, Ms. Longmire, this time through counsel, filed an amended complaint. The amended complaint added all of the university trustees as defendants and redefined the claims. The claims as redefined are:

(1) That Ms. Longmire was sexually harassed in violation of rights guaranteed her by Title VII of the Civil Rights Act of 1964;

(2) That Ms. Longmire was terminated from her employment in retaliation for her filing of a charge with the EEOC in violation of rights guaranteed her by Title VII of the Civil Rights Act of 1964;

(3) That Alabama State University and its trustees negligently and wantonly failed to supervise Dr. Howard;

(4) That Dr. Howard committed an assault and battery on Ms. Longmire;

(5) That Dr. Howard invaded Ms. Longmire's privacy;

(6) That Dr. Howard committed the tort of outrage against Ms. Longmire;

(7) That all of the defendants breached a contract which they had with Ms. Longmire.

On October 13, 1991, Dr. Howard filed a counterclaim against Ms. Longmire which alleges that Ms. Longmire abused legal process and defamed him by accusing him of having attempted to rape her. Ms. Longmire, through counsel, filed a "third amended complaint" on January 13, 1992.[1] The complaint added a claim that the sexual harassment also violated the Civil Rights Act of 1991. It also added claims under 42 U.S.C. § 1983 for sexual discrimination and for violation of rights guaranteed by the First Amendment to the Constitution of the United States. A "fourth amended complaint" was filed on September 23, 1992. That complaint added a claim against Dr. Joe Reed alleging that Dr. Reed violated Ms. Longmire's constitutional rights by terminating her employment because she filed a complaint with the state Ethics Commission.

On July 31, 1992, United States District Judge Myron Thompson issued an order on the defendants' motions to dismiss. A supplemental order was filed on October 22, 1992. According to the terms of those orders, the only claims which Ms. Longmire may pursue against the trustees of Alabama State University are claims under 42 U.S.C. § 1983 for injunctive relief in their official capacities. Alabama State University remains a defendant for purpose of the Title VII claim and Dr. Howard remains a defendant for the Title VII claims, the § 1983 claims, and the state law claims for assault, invasion of privacy, and outrageous conduct.

This case is currently pending on a series of discovery disputes. The issues have been briefed by the parties and the court held oral argument on the various issues on December 11, 1992.

## II. DISCUSSION

The discovery phase of this case has been marked by hostility, anger and a general inability on the part of counsel to get along. The taking of depositions is almost always marked by scheduling problems. When the scheduling problems are resolved and the depositions commence, the court can always anticipate receiving calls from counsel to make rulings on problems which occur during the depositions. The difficulties with the depositions and the daily phone calls to the court caused the court to issue an extensive order concerning the conduct of counsel during depositions. The order was issued on October 7, 1992.

The court has had to involve itself in the minutiae of the discovery process. On November 6, 1992, the court was required to issue an order concerning the length of questioning during the plaintiff's deposition because of the inability of counsel to resolve the issue. Since October 30, 1992, at least nine

---

1. A second amended complaint was filed which simply changed the name of one of the trustees.

separate discovery motions have been filed. The court has held hearings on discovery matters on October 8, October 26, November 5, and December 11. It has issued orders on discovery matters on October 6, October 7, October 8, October 15, October 28, and November 6.

## A. THE ISSUES IN JUDGE THOMPSON'S ORDER OF NOVEMBER 20

The serious discovery disputes in this case began on October 6, 1992 when the parties began taking depositions. The bulk of the disputes in this case have centered around the desire of counsel for Dr. Howard and Ms. Longmire to inquire, in deposition, about each others previous sexual activity. On October 15, 1992, this court entered an order limiting that inquiry. The parties then filed various pleadings asking that the limits on the inquiry about the sexual activities be changed. On October 28, 1992, the court entered another order relating to the scope of the parties inquiry about sexual activity. Under the terms of that order, counsel for the defendants were allowed to ask Ms. Longmire about her sexual activity with other persons while she was employed at Alabama State about which Dr. Howard had knowledge. Counsel for Ms. Longmire was allowed to ask questions about sexual activities which Dr. Howard may have had with persons with whom he had a supervisor/supervisee relationship or employer/employee relationship during his most recent term at Alabama State. All of the parties appealed the October 28 order.

Following a hearing on the appeal of the October 28 order, Judge Thompson, on November 20, 1992, issued an order directing the undersigned magistrate judge to review certain discovery issues which the parties had not yet presented. A hearing was held on those discovery issues on December 11, 1992. Each of those issues will be discussed in turn.[2]

## 1. LONGMIRE'S INQUIRY INTO HOWARD'S ACTIVITIES AT JACKSON STATE

Dr. Howard left Alabama State to go to Jackson State University in 1976. He returned to Alabama State in 1984.[3] Ms. Longmire contends that she should be allowed to ask Dr. Howard questions about his sexual activity with women other than his wife while he was employed at Jackson State and during his first employment at Alabama State.

■ The limits which the court has placed on the inquiry about Dr. Howard's sexual activity on the Title VII and § 1983 claims by this court's order of October 28, 1992 appear appropriate under the case law. Evidence of Dr. Howard's sexual activities with women at Alabama State while Dr. Howard was employed there is relevant to the sexual harassment issues before the court. In *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1415 (10th Cir.1987), the court found that evidence of other acts of sexual harassment involving other employees was admissible in determining the "hostile environment" issue. *See also Sowers v. Kemira, Inc.,* 701 F.Supp. 809, 813 (S.D.Ga.1988); *Weiss v. Amoco Oil Co.,* 142 F.R.D. 311 (S.D.Iowa 1992). It is equally clear, however, that Dr. Howard's activities outside the work place are irrelevant. *Tomson v. Stephan,* 705 F.Supp. 530, 536 (D.Kan.1989).

■ The only argument which the Ms. Longmire makes is that evidence of Dr. Howard's activities at Jackson State are relevant to show that the university trustees knew or should have known that Dr. Howard engaged in improper sexual activities at Jackson State before they hired him. Unfortunately for Ms. Longmire, there is no issue before the court which requires any inquiry into what the university trustees knew when

---

**2.** The district judge's order of November 20, 1992 also requested that the magistrate judge resolve the question of whether Ms. Longmire had laid sufficient predicate to inquire into certain alleged sexual relationships of Dr. Howard. That issue was resolved during the hearing which the magistrate judge held on November 20.

**3.** These dates were provided to the court by the parties in open court during the December 11th hearing.

they hired Dr. Howard in 1984. The negligent supervision claim which the plaintiff raised in her amended complaint has been dismissed. The only claims remaining before the court involving either the trustees or the university are the sexual harassment claims. The trustees' knowledge of Dr. Howard's sexual activity while at Jackson State are irrelevant to those claims.

■ The plaintiff has never specifically categorized her sexual harassment claim as either a "quid pro quo" claim or a "hostile environment" claim. If the plaintiff's claim is a "quid pro quo" claim, a theory of strict liability applies. If the plaintiff's claim is a "hostile environment" claim, she can prevail against the university defendants only if she shows that the defendants knew or should have known of the harassment and failed to take prompt remedial action against Dr. Howard. *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1316 (11th Cir.1989). In either case, the trustees' knowledge of Dr. Howard's sexual activities at Jackson State or at ASU during his previous tenure is absolutely irrelevant.

This case has been marked by open hostility between counsel for the parties. It is important that this court place limits on inquiries into sensitive areas such as sexual activity in order to control the case. The limitations which the court has placed on the examination of Dr. Howard are consonant with both the letter and the spirit of Rule 26 and necessary to prevent unnecessary embarrassment and invasions of Dr. Howard's private life.

The court wishes to note, however, that its ruling is based on the present state of the record. If the plaintiff has actual evidence, not argument, which would establish a good faith basis for the inquiry about Dr. Howard's sexual activity at places other than Alabama State and some relevance to that inquiry, the plaintiff may make an ex parte motion under seal requesting that the court allow such inquiry.

### 2. HOWARD AND THE 404(B) EVIDENCE

■ The interests which Dr. Howard possesses in being free from harassment, embarrassment, and unnecessary invasions into his private life are also possessed by Ms. Longmire. She too has the right to be protected from an invasive inquiry which is irrelevant for discovery purposes. Indeed, courts need to be particularly vigilant in controlling discovery in sexual harassment cases. *Priest v. Rotary,* 98 F.R.D. 755, 761 (N.D.Cal.1983). In this case, Dr. Howard argues that evidence about Ms. Longmire's prior sexual activity is relevant because such evidence may be admissible under Rule 404(b) of the Federal Rules of Evidence.

■ Under Rule 404(b):

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Dr. Howard argues that he should be allowed to inquire into Ms. Longmire's sexual history because "it is submitted that evidence of any prior instance in which the plaintiff may have been engaged in sexual relationships with individuals in authority over her, resulting in the plaintiff accepting money or favors from such individuals after they have been placed in a compromising position, would be relevant to the plaintiff's motive, plan, or scheme in this case." This sort of generalized allegation that there might be some 404(b) evidence somewhere in the case is insufficient to overcome the "potential of the requested discovery to harass, intimidate and discourage the plaintiff in her efforts to prosecute her cause." *Priest,* 98 F.R.D. at 761. "Questions remote in time or place to the working environment are wholly irrelevant and unlikely to lead to admissible evidence. Such questions would only serve as tools of annoyance and harassment and serve no purpose." *Mitchell v. Hutchings,* 116 F.R.D. 481, 485 (D.Utah 1987).

As with the ruling concerning the scope of the inquiry into Dr. Howard's past, this ruling is based on the record before the court. If the defendants have actual evidence, as opposed to argument, which would establish

a good faith basis for the inquiry about Ms. Longmire's past sexual activity and some relevance to it, they may make an ex parte motion under seal requesting that the court allow such inquiry.

### 3. LIMITS OF DISCOVERY ON THE DEFAMATION CLAIM

■ Ms. Longmire makes the further argument that she should be allowed to inquire into Dr. Howard's past sexual activities because Dr. Howard has filed a defamation action against her. Under well-settled Alabama law, a person who files a defamation action puts his or her character in issue. *Parker v. Newman*, 200 Ala. 103, 75 So. 479, 485 (1917). In a defamation action, the plaintiff may offer evidence of his good character and his character with reference to the matter charged in the defamation. *Webb v. Gray*, 181 Ala. 408, 62 So. 194, 198 (1913). *See also Bill Steber Chevrolet–Oldsmobile, Inc. v. Morgan*, 429 So.2d 1013, 1015 (Ala. 1983). The defendant may then offer evidence of the plaintiff's bad character. *Webb v. Gray*, 62 So. at 198. Because Dr. Howard has placed his character "in issue" by filing a defamation action, his good or bad character may be proven by specific instances of his conduct. Fed.R.Evid. 405(b); *Government of the Virgin Islands v. Grant*, 775 F.2d 508, 511 (3rd Cir.1985).

■ In this case, Dr. Howard claims that he has been defamed by Ms. Longmire's statement that he attempted to rape her. Consequently, counsel for Ms. Longmire may ask Dr. Howard about any incidents where he is alleged to have assaulted other females or attempted to force them to have sex with him against their wills. If Dr. Howard intends to offer evidence of his general good character, then counsel for Ms. Longmire is free to ask questions about any extra-marital affair that Dr. Howard may have had while he was either at Jackson State or Alabama State.

### B. THE OTHER PENDING DISCOVERY ISSUES

### 1. DISCOVERY FROM THE ASU TRUSTEES

The plaintiff has propounded a series of interrogatories to the individual members of the Alabama State University Board of Trustees. The court has reviewed the interrogatories and much of the information which the plaintiff seeks is beyond the knowledge of the trustees. During the hearing which was held in this case on December 11, counsel for the plaintiff indicated that she was requesting only that the trustees answer interrogatories directed to their personal knowledge of facts which are relevant to this case. The ASU trustees contend that they cannot be compelled to answer the interrogatories but that they will make themselves available for deposition and will respond to subpoenas duces tecum. The basis for the trustees' contentions is the order of the court granting them summary judgment on the issue of qualified immunity. *See Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The trustees' contention misapprehends the law.

■ The damage claim against the trustees in their individual capacities has been dismissed. They still remain as defendants in their official capacities for purposes of injunctive relief. Under well-settled law, the defense of qualified immunity is "totally immaterial" to claims for injunctive relief. *Tubbesing v. Arnold*, 742 F.2d 401, 404 (8th Cir.1984). Indeed, in cases where injunctive relief is requested, discovery should go forward even where defendants have prevailed on their qualified immunity defense. *See, e.g., Lugo v. Alvarado*, 819 F.2d 5 (1st Cir. 1987). There are, of course, cases where parties remain as defendants after they have successfully litigated their qualified immunity defense because there is some susceptibility to injunctive relief. In such a case where a defendant remains for purposes of injunctive relief only and has no knowledge of the underlying facts of the case, no discovery from that defendant should be permitted. However, defendants who are in a case solely for injunctive relief purposes but who have knowledge of the facts of a case may be subjected to discovery even if their qualified immunity defense has been successful. *Denton v. Twyford*, 142 F.R.D. 140 (S.D.Ohio 1992).

In this case, the plaintiff has argued to the court that the trustees have personal knowledge of critical facts in this case. The trustees have presented no contrary evidence. Consequently, the trustees can be compelled to answer the plaintiff's interrogatories but only insofar as the interrogatories seek information about the trustees' personal knowledge or relevant facts. The only interrogatories which appear to the court to relate to the personal knowledge of the trustees are interrogatories 6, 7, 9, 10, 11, 12, 13, 14, 15, 16, 24 and 28.[4]

## 2. THE MARITAL PRIVILEGE ISSUE

During the deposition of Dr. Howard's wife, Caroline Howard, counsel for Dr. Howard repeatedly invoked the marital privilege and instructed Mrs. Howard not to answer the question. The plaintiff filed a motion to compel answers to those questions on November 16 and on November 30. The court has reviewed the questions to which the marital privilege was asserted. The court, during the hearing which was held on December 11, indicated its view that in certain instances the assertion of the privilege was proper but that in other instances the assertion of the privilege was frivolous. Counsel for the parties then agreed to meet to narrow the focus of the motion to compel.

## 3. LONGMIRE'S PRESENCE DURING DOCUMENT PRODUCTION

██ Plaintiff's counsel has insisted that Ms. Longmire be present during the production of documents. ASU and its trustees have objected to her presence during the production of personnel files. The decision as to whether a plaintiff should have personal access to personnel files during the discovery process requires that the competing interests be balanced. See, e.g., Rossini v. Ogilvy and Mather, Inc. 798 F.2d 590, 601 (2d Cir.1986). In this case, plaintiff's counsel has indicated to the court that the plaintiff's presence will

make document production more efficient because of the plaintiff's personal knowledge of the case. The defendants have offered no evidence to the court that the plaintiff is likely to disseminate confidential information which she obtains during the course of discovery. Consequently, the oral motion of the defendants to exclude the plaintiff from production of the personnel files should be denied. See Cobb v. Rockefeller University, 1991 WL 222125, 1991 U.S.Dist. LEXIS 15278 (S.D.N.Y. October 24, 1991) (Plaintiff in a sex discrimination lawsuit should be allowed access to files of former colleagues even though those files contain confidential information about hiring and tenure.) Ms. Longmire is cautioned, however, that she will be required to abide by any order of this court concerning non-disclosure of information.

## C. MISCELLANEOUS DISCOVERY ISSUES

## 1. PLAINTIFF'S MOTION TO COMPEL FILED ON NOVEMBER 16

On November 16, 1992, the plaintiff filed a motion to compel seeking an order directing ASU and its trustees to respond to certain interrogatories and document requests. The question of whether the trustees must answer interrogatories has been discussed above. The issue of document production has been discussed at both the November 20 hearing and the December 11 hearing. On December 14, ASU was to produce the documents requested. Accordingly, the motion to compel is due to be granted insofar as it applies to the interrogatories directed to the ASU trustees. It is to be otherwise denied as moot, subject to renewal if the documents requested are not produced.

## 2. ASU'S MOTION FOR PROTECTIVE ORDER FILED DECEMBER 7

On December 7, 1992, ASU filed a motion for protective order concerning the schedul-

---

**4.** The plaintiff's counsel served identical sets of interrogatories on ASU and its trustees. As a result, many of the interrogatories and requests for production of documents which are contained in the interrogatories to the trustees have nothing to do with the trustees. This absolute lack of specificity contributes unnecessary confu-

sion. Unfortunately for ASU and the trustees, no objections to the interrogatories were filed within the time permitted by the Federal Rules of Civil Procedure. Had objections been made, the court would have directed plaintiff's counsel to file new interrogatories.

ing of certain depositions. The parties have agreed to a deposition schedule and the motion is, therefore, moot.

### 3. PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS FILED ON DECEMBER 14

On December 14, 1992, the plaintiff filed a motion to compel relating to the deposition of Colonel Clarence Holloway. ASU arranged for Colonel Holloway to be deposed on the afternoon of December 14. Consequently, the motion to compel is moot. The motion for sanctions still remains.

### III. CONCLUSION

For the foregoing reasons, it is hereby ORDERED:

(1) That inquiry into sexual activities of Ms. Longmire and Dr. Howard with other persons be limited according to the terms of this court's order of October 28, 1992 with the following modification:

Ms. Longmire, through counsel, may question Dr. Howard about any incidents where he is alleged to have assaulted other females or attempted to force them to have sex with him since Dr. Howard has placed his character in issue by filing a claim for defamation. If Dr. Howard intends to offer evidence of his general good character, then counsel for Ms. Longmire is free to ask questions of Dr. Howard about any extra-marital affair he may have had since his initial employment at Alabama State;

(2) That the parties may file an ex parte motion under seal to expand the scope of the inquiry concerning sexual activities with other persons. The motion should contain, at a minimum, a recitation of the evidence which exists concerning the sexual activity about which the parties seek to inquire and a brief showing the relevance of the evidence. For example, if Dr. Howard wishes to inquire about an incident of sexual activity involving Ms. Longmire which occurred outside of the work place, he may file an ex parte motion under seal seeking leave of court to make such an inquiry. The motion should recite the evidence which he has concerning the sexual activity and the source of that evidence and a brief showing how evidence of that sexual activity is relevant under Rule 26 of the Federal Rules of Civil Procedure. If Ms. Longmire wishes to inquire about Dr. Howard's activity while he was at Jackson State, for example, she may file an ex parte motion under seal which recites the evidence which she has regarding that sexual activity and the source of the evidence and a brief showing how evidence of that sexual activity is relevant under Rule 26 of the Federal Rules of Civil Procedure. Upon a showing that there is a good faith basis for the inquiry and a showing that the inquiry is relevant, the court will issue and order permitting the inquiry. Such ex parte motions must be made in sufficient time to allow the court to consider the motion, issue a ruling and allow redeposition of either Dr. Howard or Ms. Longmire before the discovery cut-off date unless all parties agree that the redeposition may occur after that date;

(3) That the plaintiff's motion to compel filed on November 16, 1992 directed to the ASU trustees be granted in part and denied in part as follows. The ASU trustees shall serve full and complete answers to the following interrogatories on or before December 24, 1992: Interrogatories 6, 7, 9, 10, 11, 12, 13, 14, 15, 16, 24, 28 and 29. The motion to compel is denied as moot insofar as it relates to the production of documents. The motions, however, may be renewed;

(4) That the plaintiff's motion to compel filed November 16, 1992 and the motion to compel answers or motion to suppress filed November 30, 1992 be denied as moot. The motions, however, may be renewed;

(5) That the motion for protective order filed by ASU on December 7, 1992 be denied as moot; and

(6) That the motion to compel and motion for sanctions filed on December 14, 1992 be denied in part as follows: The motion insofar as it seeks to compel the deposition of Dr. Clarence Holloway is denied as moot.