**Angela QUARLES, Plaintiff,**

v.

**McDUFFIE COUNTY, and Paul Adams, Defendants.**

**Civil Action No. CV195–164.**

United States District Court,
S.D. Georgia,
Augusta Division.

Oct. 1, 1996.

---

John Wesley Seaman, Jr., Pardue & Associates, John Michael Brown, John Michael Brown, P.C., Augusta, GA, for plaintiff.

Roger Ware Dunaway, Jr., Dunaway & Wallace, Thomson, GA, James W. Purcell, Elizabeth A. McLeod, Fulcher, Hagler, Reed, Hanks & Harper, Augusta, GA, for defendants.

### *ORDER*

ALAIMO, District Judge.

Plaintiff, Angela Quarles ("Quarles"), brings the present action alleging sexual harassment and retaliation, seeking damages under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Quarles also asserts violations of state law.[1] Currently before the Court are two motions for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, by Defendants, McDuffie County ("County"), and Paul Adams ("Adams"). For the reasons stated below, Defendants' motions will be **GRANTED IN PART** and **DENIED IN PART**.

### *FACTS*

In the case at bar, Quarles claims that while working as an employee for the County, she was a victim of sexual harassment by Adams, who was her immediate supervisor. Quarles worked as a "911" radio dispatcher for approximately five weeks before she was fired by Adams. Quarles claims that she was fired for engaging in the protected activity of telling Adams to cease his sexual harassment. Defendants assert, however, that Quarles was properly terminated for violating the County's policies concerning confidentiality.

In January, 1995, Quarles was hired by Adams to work for McDuffie County as a radio dispatcher. During her tenure as a County employee, Quarles was supervised by Adams, who served as the Director of 911 services for the County. She claims that while working as a radio dispatcher, Adams both physically and verbally sexually harassed her. Specifically, Quarles claims that during her short period of employment with the County, Adams sexually harassed her at least four times.

The incidents of which Quarles complains are as follows. First, she alleges that during her interview, Adams made suggestive comments to her indicating that if they were to travel on business together, he was unsure whether he could "behave" himself. Second, after being hired by Adams, Quarles alleges that when she re-entered her workplace after a short break, Adams stopped her and placed his arm around her waist. When he touched her, Quarles pushed him away and returned to her duty station. The third claim asserted by Quarles is similar to the second. She claims that while re-entering the building, Adams again placed his arm around her. Quarles claims that at that time she told Adams that he was "going to have to stop" touching her. (*See* Pl.'s Dep. at 45.). The fourth alleged incident between Quarles and Adams occurred in Adams' office. Quarles claims that Adams called her into his office and asked her to assist in distributing building supplies. When she approached him to take the supplies, he allegedly grabbed her, thereby pinning her arms. He placed one hand on her buttocks, and forcefully attempted to kiss her. Quarles claims that she became scared, pushed him away, and stated, "Look, I have had it with your games. It's

---

1. This lawsuit was originally filed by both Quarles and Cathy Y. Gheesling ("Gheesling"). Gheesling made a motion to dismiss all of her claims against Defendants without prejudice on April 15, 1996. That motion was granted by the Court on May 28, 1996.

going to either stop or I'm going to tell somebody because I can't handle you acting like this anymore." (Pl.'s Dep. at 50.)

Quarles admits that there were never any witnesses to any of the aforementioned acts of alleged sexual harassment by Adams. She does claim, however, that after she told Adams to leave her alone, she experienced even more harassment from him. Quarles also claims that she purposely avoided Adams so she would not have to be alone with him.

Although she had been given a computer-based test on sexual harassment in the workplace, Quarles denies knowing about any formal policy of the County concerning sexual harassment.[2] She admits receiving an employee's handbook on various policies and procedures, but claims that she did not read that handbook thoroughly. Notwithstanding her failure to read thoroughly the handbook, Quarles did sign a statement claiming to have read it in its entirety. (*See* Pl.'s Dep at 100.)

At the end of February, 1995, Quarles told one co-worker, Gloria Muchler ("Muchler") about Adams' inappropriate behavior. Muchler suggested that Quarles inform Joyce Blevins ("Blevins"), who served as the County Administrator and apparently served as Adams' supervisor. Quarles telephoned Blevins and made an appointment to speak to her on March 1, 1995. Quarles, however, overslept and missed her appointment with Blevins.[3] After missing her meeting with Blevins, Quarles went to work and found Adams waiting for her. At that time, Adams informed Quarles that she had violated the County's policies by disseminating confidential information gained through her employ-

ment and that she could not be trusted. As a result, Adams fired her on the evening of March 1, 1995.[4] Quarles claims that when Adams fired her, he also threatened her concerning her future career aspirations. Reportedly, during their conversation Adams stated that if she were ever to "cross" him, he would ensure that she would never receive her Emergency Medical Technician (EMT) license.

On the morning of March 2, 1995, immediately following her termination, Quarles met with Blevins to discuss this entire matter. At that time, Quarles was informed that another female employee, Gheesling, had previously resigned her position as a radio dispatcher, claiming that Adams had sexually harassed her. During their conversation, Blevins telephoned the County attorney and stated, "Adams has done it again." (Pl.'s Aff. ¶ 44.) Blevins discussed the matter with Quarles and then sent her to the Personnel Director to file a formal complaint against Adams. Although Quarles was only a probationary employee and apparently not entitled to a termination hearing, the County nevertheless afforded her a hearing concerning her formal complaint against Adams.[5] At that hearing, Adams admitted that he had been fired by his former employer, Pierce County, because four women had accused him of sexual harassment. Following the hearing, the County upheld Quarles' termination and retained Adams' services.

Quarles claims that although she would like to receive treatment concerning her emotional trauma, she is unable to afford such treatment. She also claims that such treatment is not readily available on a free basis in her area. Although Quarles has been treated by neither a physician nor a

---

2. Quarles claims that after receiving a high score on her computer-based sexual harassment test, Adams stated, "At least now you'll know when I'm sexually harassing you." (Pl.'s Dep. at 103.) She stated that although she made no response to his comment at that time, she felt that his comment was inappropriate.

3. Quarles claims that because she was working the "midnight" shift, she was tired and slept through her scheduled meeting with Blevins.

4. Adams claims that he had counseled Quarles on prior occasions concerning the confidentiality

policies of the County. Quarles denies having ever been counseled by Adams concerning any breach of confidentiality on her part. She does admit having been counseled by Adams concerning personality conflicts with her co-workers, but that she was reassured by Adams that her job performance was satisfactory.

5. Quarles was afforded a termination hearing due to the "nature" of her complaint. Apparently, the County offered her a hearing since she was complaining of sexual harassment in the workplace.

counselor concerning her alleged trauma, she nevertheless claims to have suffered emotional and physical injuries as a result of Adams' wrongful conduct.

Quarles originally brought several claims against Defendants based on both federal and state law. Quarles has, however, expressly limited her lawsuit to four claims against Defendants, including three claims under Title VII and one claim under state law. (*See* Pl.'s Resp. at 1.) First, she alleges that she was the victim of *quid pro quo* sexual harassment. Second, Quarles alleges that she was a victim of hostile environment sexual harassment. Third, Quarles claims that Defendants retaliated against her in violation of Title VII. Finally, Quarles claims that Adams is liable for intentional infliction of emotional distress. These claims are discussed below.

## DISCUSSION

### I. *Summary Judgment*

Summary judgment requires the movant to establish the absence of genuine issues of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Lordmann Enterprises, Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1532 (11th Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 335, 133 L.Ed.2d 234 (1995). After the movant meets this burden, "the non-moving party must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 524 (11th Cir.1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-moving party to a summary judgment motion need make this showing only after the moving party has satisfied its burden. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

The court should consider the pleadings, depositions and affidavits in the case before reaching its decision, Fed.R.Civ.P. 56(c), and all reasonable inferences will be made in favor of the non-movant. *Griesel v. Hamlin,* 963 F.2d 338, 341 (11th Cir.1992). Additionally, a "court need not permit a case to go to a jury ... when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible'." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir.1996). Furthermore, when the evidence is only circumstantial, summary judgment may be granted when a court "concludes that no reasonable jury may infer from the assumed facts the conclusions upon which the non-movant's claim rests." *Id.*

### II. *County*

#### A. Hostile Work Environment

The County makes several arguments in support of its motion for summary judgment. First, the County asserts that it had no knowledge of Adams' wrongful conduct. Second, the County asserts that Quarles has failed to assert a "pattern" of sexual harassment and, therefore, she may not recover for hostile work environment sexual harassment. Finally, the County argues that it cannot be held liable for any of the alleged violations of state law. For the following reasons, the Court disagrees with the County's arguments and will deny its motion.

Title VII of the Civil Rights Act of 1964 prohibits discrimination by an employer "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1) (1994) (as amended). This prohibition extends to sexual harassment in the workplace. *Henson v. City of Dundee,* 682 F.2d 897 (11th Cir.1982).

Viewing the evidence in the light most favorable to Quarles, it appears that there was, in fact, some inappropriate conduct by Adams. Naturally, the Court finds sexual harassment intolerable in any situation, especially within the workplace. Notwithstanding any wrongdoing by Adams, Quarles may defeat the County's motion for summary judgment only if she can clear two hurdles. First, she must establish a *prima facie* case of hostile work environment sexual harassment against the County. If Quarles can establish a *prima facie* case, then she must also show that there are genuine issues of material facts outstanding in this matter. For the following reasons, Quarles is able to clear both hurdles.

### 1. *Prima Facie Case*

Quarles seeks to recover under the hostile work environment theory of sexual harassment. In order to make out a *prima facie* case of hostile work environment sexual harassment, a plaintiff is required to show (1) membership in a protected group; (2) subjection to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment affected a term, condition, or privilege of employment, in that it was sufficiently severe or pervasive "to alter the conditions of [the victim's] employment and create an abusive working environment," *Id.* at 904; and (5) that the company knew or should have known of the harassment and failed to take remedial action. *Huddleston v. Roger Dean Chevrolet, Inc.,* 845 F.2d 900, 904 (11th Cir.1988); *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1557 (11th Cir.1987).

In the case at bar, none of the parties disputes that Quarles is a member of a protected group. Additionally, viewing the matter in the light most favorable to Quarles, it appears that she was subjected to unwelcome sexual harassment based on her sex. Concerning the fourth and fifth elements of the *prima facie* case, however, it appears that there are still genuine issues of material facts remaining in this matter. It is clear to the Court that Quarles was fired by Adams. It is unclear whether such termination was based upon Quarles' refusal to acquiesce to Adams' alleged acts of sexual harassment, or whether Quarles was fired for violating the County's policies. In either event, maintaining one's job in unquestionably a "term, condition, or privilege of employment."

The Court also gives the benefit of the doubt to Quarles that Adams' misconduct was sufficiently severe or pervasive to alter the conditions of her employment and create an objectively abusive working environment. *See Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (requiring that the work environment be reasonably perceived as hostile or abusive); *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49, 59 (1986) (requiring that the work environment be hostile or abusive). Finally, although the County did take action in this matter, such action was taken after Quarles' termination, and, therefore, did not adequately respond to Quarles' needs as an employee.

While an employer can show the non-existence of a *prima facie* case by "establishing that the events did not take place, or were not sufficiently severe to be actionable, or *by pointing to prompt remedial action reasonably calculated to end the harassment ...,*" it does not appear that the County can do any of the foregoing. *Sanchez v. City of Miami Beach,* 720 F.Supp. 974, 980 (S.D.Fla. 1989) (emphasis added). Therefore, the relevant question is not whether Quarles was harassed but, rather, whether the County knew or should have known of the alleged harassment and reacted promptly.

The Eleventh Circuit has held that:

Strict liability is illogical in a pure hostile environment setting. In a hostile environment case, no *quid pro quo* exists. The supervisor does not act as the company; the supervisor acts outside "the scope of actual or apparent authority to hire, fire, discipline, or promote." Corporate liability, therefore, exists only through *respondeat superior;* liability exists where the corporate defendant knew or should have know of the harassment and failed to take prompt remedial action against the supervisor.

*Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1316 (11th Cir.1989) (citing *Henson,* 682 F.2d at 905; *Bundy v. Jackson,* 641 F.2d 934, 943 n. 8 (D.C.Cir.1981)). Thus, the proper standard to apply in a pure hostile environment case, as opposed to a *quid pro quo* case, is the *respondeat superior* standard. Although direct liability may, at times, be imposed on an employer for harassment caused by its employees, for direct liability to attach both hostile environment *and quid pro quo* sexual harassment must be present. *See Steele,* 867 F.2d at 1316. Thus, to prevail against the County on the claim of hostile environment sexual harassment, Quarles must prove that the County knew or should have known of the harassment and failed to take prompt remedial action.

As presented to the Court, there are certain facts that indicate that the County should have been aware of potential sexual harassment by Adams.[6] First, the County accepted the resignation of Gheesling, a former plaintiff in this case, after she stated that she was resigning due to Adams' sexual harassment. Second, during her meeting with Quarles, Blevins stated to the County attorney that "Adams has done it again." It appears, after viewing the matter in the light most favorable to Quarles, that the County knew or should have known that Adams tended to harass women sexually in the workplace.

It also appears that Quarles understood that any complaints of sexual harassment should be made to Blevins. Accordingly, Quarles contacted Blevins and scheduled an appointment with her for March 1, 1995. Although Quarles unintentionally missed that meeting, she nonetheless had the intent to file a complaint with the County's management and, eventually, did so. Quarles had also informed another employee about the alleged sexual harassment by Adams. Given that Quarles was fired before filing her formal complaint, her efforts to file a claim were thwarted by her termination by Adams. As such, Blevins was precluded from taking prompt remedial action in this case. For the foregoing reasons, the Court will deny the County's motion to dismiss on this issue.

## B. Quid Pro Quo

■ In addition to claiming hostile work environment sexual harassment, Quarles has also asserted a claim for *quid pro quo* sexual harassment. *Quid pro quo* sexual harassment involves a supervisor's attempt to garner sexual consideration from an employee by offering job benefits as a *quid pro quo*. *See Mills v. Amoco Performance Prod., Inc.,* 872 F.Supp. 975, 989 (S.D.Ga.1994). *Quid pro quo* sexual harassment requires proof that plaintiff's acceptance of the harassment is an express or implied condition to receiving a job benefit or not receiving negative treatment. *Sowers v. Kemira, Inc.,* 701 F.Supp. 809, 823 (S.D.Ga.1988) (finding a *prima facie* case of *quid pro quo* sexual harassment when plaintiff's rejection of supervisor's advances resulted in delay of promotion).

Although direct liability may, at times, be imposed on an employer for harassment caused by its employees, in order for direct liability to attach, both hostile environment and *quid pro quo* sexual harassment must be present. *See Steele,* 867 F.2d at 1316. Quarles has asserted causes of action for both types of sexual harassment in the case at bar, and, therefore, direct liability may

**6.** The County asserts that any prior complaints against Adams cannot be considered by the Court on the issue of whether the County knew or should have known of Adams' propensity to harass women sexually. In support of that proposition, the County has cited *Longmire v. Alabama State Univ.,* 151 F.R.D. 414 (M.D.Ala.1992) and *Garvey v. Dickinson College,* 763 F.Supp. 799 (M.D.Pa.1991). Neither of these cases is binding precedent on the Court. Moreover, the cases cited do not unequivocally disallow evidence of past complaints against an employee to prove knowledge on the part of a current employer.

In *Longmire,* the court stated that while other acts of sexual harassment involving other employees is admissible, claims involving sexual harassment while employed elsewhere are generally not admissible. The court went on to explain, however, that "[i]f the plaintiff has actual evidence, not argument, [to] establish a good faith basis for the inquiry about [the perpetrator's] sexual activity at places other than [his current job] and some relevance to that inquiry, [she] may make an ex parte motion ... requesting that the court allow such inquiry." *Longmire,* 151 F.R.D. at 418. Thus, the court did not impose an absolute bar to the use of such evidence as long as both relevance and actual evidence are shown.

Furthermore, in *Garvey,* the court indicated that evidence of the perpetrator's alleged harassment of other women is "clearly relevant because it tends to show his attitude toward women and his treatment of them...." *Garvey,* 763 F.Supp. at 801. The court noted that such evidence may be limited if too remote in time or too attenuated from plaintiff's situation. *Id.* at 801–02. Moreover, the court indicated that such a determination is more appropriate during trial, when the court can evaluate all "relevant considerations." *Id.* at 802.

Even if the Court agreed with the County's interpretation of these cases, Quarles has provided evidence other than past complaints against Adams to show that the County knew or should have know that he sexually harassed women in his position with the County. The Court, therefore, will deny the County's motion on this issue based upon other evidence provided by Quarles. The Court reserves its right to re-visit this issue in the future.

attach. In this case, it appears that once Quarles complained to another co-worker and expressed her intention to file a formal complaint, she was subsequently fired by Adams, who served as her supervisor.

The County argues that Quarles never received a demotion, promotion, or any change in her rate of pay. The County fails to recognize, however, that Quarles' entire tenure with the County lasted less than two months. She was a probationary employee on the day she was fired and, apparently, was not eligible for promotions or pay advancements. Although the County argues that Adams was justified in firing Quarles for violating written policies, Quarles has produced sufficient evidence to convince the Court that a genuine issue of material fact still remains. Quarles claims that she did not breach any rules of confidentiality and that she was never counseled concerning her performance. In fact, both Adams and Quarles admit that the counseling sessions involved matters about personality conflicts with other co-workers and not with Quarles' job performance.

Quarles was fired shortly after discussing Adams' conduct with another employee. Additionally, she was fired shortly after telephoning Blevins to schedule a meeting in order to file a formal complaint against Adams. Although Adams may not have expressly requested sexual consideration from Quarles in order for her to keep her job, Quarles has produced sufficient evidence at this stage to persuade the Court that rebuffing Adams' advances may have led to her termination. Viewed in the light most favorable to Quarles, the Court finds that there are genuine issues of material facts remaining concerning Quarles' claim of *quid pro quo* sexual harassment.

## C. Retaliation

In order to defeat the County's motion for summary judgment on this issue, Quarles must also persuade the Court the she can establish the existence of a *prima facie* case against the County for retaliation.

### 1. Prima Facie Case

A *prima facie* case of retaliation requires a showing of three elements. *See Meeks v. Computer Assoc. Int'l,* 15 F.3d 1013 (11th Cir.1994). These elements are that the plaintiff (1) engaged in statutorily protected conduct, (2) suffered an adverse employment action and, (3) that there is some causal connection between the two events. *Id.* These three elements are discussed below. After a *prima facie* case has been shown, however, a defendant "must proffer a legitimate, non-discriminatory reason for the adverse employment action." *Id.* at 1021. A defendant's burden in this regard is "exceedingly light." *Id.* If a defendant can proffer such a reason, the plaintiff "must then demonstrate that the employer's proffered explanations are a pretext for retaliation. . . ." *Id.* Thus, while the burden of production may shift, the burden of persuasion remains with the plaintiff. *Id.*

### a. Protected Conduct

█ Quarles alleges that she engaged in the protected conduct of telling her immediate supervisor, Adams, that he was harassing her. (*See* Pl.'s Resp. at 17.) On at least two occasions, Quarles claims that she told Adams that he was making her uncomfortable and that his harassment must stop. Clearly, Quarles engaged in the most basic form of protected conduct; namely, telling a harasser, who also was serving as her supervisor, to cease all forms of physical and verbal harassment.

### b. Adverse Action

Quarles claims that the adverse action taken against her was her termination by Adams on March 1, 1995. Once again, this is the most basic type of adverse action in the employment setting. The difficult question in this analysis then becomes whether Quarles' protected conduct was causally related to the adverse action taken by Adams.

### c. Causal Connection

█ Quarles asserts that she was terminated as a result of her rebuffing Adams' advancements. She claims that after rebuffing Adams' wrongful conduct, she was sub-

jected to increasing harassment, which ultimately led to her termination. Although not specifically alleged, it appears that Quarles also believes that informing Muchler of Adams' conduct and calling Blevins to schedule an appointment also led to her termination. (*See* Pl.'s Resp. at 17 (referring generally to "complaints" she made about Adams' sexual harassment).)

Defendants claim that Quarles was rightfully terminated for violating her duty to keep all emergency information confidential. Specifically, it is alleged that Quarles wrongfully discussed two confidential matters with individuals who were not entitled to that information. Quarles forcefully denies breaching any confidentiality. Moreover, Quarles contends that any information she gained during her employment as a radio dispatcher was dispensed to individuals who could have or did receive that information from other means. The County also asserts that Quarles cannot show any causal connection for her retaliation claim since the protected activity was not followed closely by the discriminatory treatment.

In supporting its assertion that no causal connection exists, the County focuses on the length of time between Adams' acts of sexual harassment and Quarles' termination. The test established by *Meeks*, however, requires the Court to focus on whether there is a causal connection between Quarles' *protected conduct* and any *adverse employment action,* i.e., her termination.[7] Assuming, *arguendo,* that Quarles' termination and Adams' last act of sexual harassment were removed in time, her termination still followed closely her discussions with Muchler and her telephone call to Blevins to schedule an appointment to file a complaint. Moreover, her termination followed her expressions of disapproval to Adams concerning his misconduct. Although the adverse action must be causally related

to the protected activity, the Court is unwilling to impose a bright line rule concerning the length of time beyond which a causal connection will not be found.

While the evidence presented on the causal connection requirement is somewhat convoluted, Quarles has presented evidence supporting her retaliation claim. In retaliation cases, the requirement that there be a causal connection is broadly interpreted. *Meeks,* 15 F.3d at 1021 (citing *EEOC v. Reichhold Chem., Inc.,* 988 F.2d 1564 (11th Cir.1993)). A plaintiff need only "prove that the protected activity and the negative employment action are not completely unrelated." *Id.* The Court finds, therefore, that in viewing the evidence presented in the light most favorable to the non-movant, Quarles has shown a possible causal connection between her protected conduct and her termination.

### d. Proffered Explanation

The County has not specifically proffered any legitimate, non-discriminatory reason for Quarles' termination. The Court assumes that if the County were to proffer a reason, it would point to Adams' stated reasons for firing Quarles.[8] Quarles has already asserted that her firing was not based on a breach of confidentiality. Instead, she has provided the Court with enough evidence to demonstrate that Defendant's explanations are a pretext for retaliation. Accordingly, the County's motion to dismiss on this issue will be denied.

### D. Ratification

Quarles claims that notwithstanding any knowledge or lack of knowledge on the part of the County, it is nevertheless liable for Adams' wrongful conduct since it ratified his conduct. Quarles asserts that the County

7. The County also asserts that Quarles "was not fired until a month and a half after the last alleged act of sexual harassment occurred." (Def. County's Reply Br. at 6.) That assertion cannot be true. Quarles began working for the County on January 25, 1995, and was fired on March 1, 1995. Thus, her entire length of employment was less than 40 days.

8. Given that a defendant's burden in this regard is "exceedingly light," the Court has, for the purpose of thorough analysis, assumed a proffered reason on behalf of the County. However, since Quarles has effectively asserted that Adams' reasons for firing her were pretextual, any proffer by the County would be rebutted by Quarles. For the purposes of deciding this motion, Quarles has satisfied her burden.

ratified Adams' sexual harassment after Gheesling resigned and following Quarles' hearing after her termination. Basically, Quarles asserts that despite Gheesling's testimony that Adams harassed her, and Adams' testimony that he was previously fired from a job because of complaints of sexual harassment, her termination was upheld. Since the Court will deny the County's motion for other reasons, it takes no position at this time on Quarles' ratification claim.

## III. *Adams*

### A. Individual Responsibility

Quarles admits that she cannot assert a claim against Adams in his individual capacity for violations of Title VII. She asserts her claims against him, therefore, only in his representative or official capacity as an agent of the County. Thus, her claims and factual bases for those claims are identical to those asserted against the County.

The Court, therefore, will grant Adams' motion for summary judgment on all Title VII claims brought against him as an individual. Adams will remain in this suit notwithstanding the Court's granting of his motion on this issue. Given that Adams is an agent of the County, he will remain a defendant in this matter in his official capacity for all claims based upon Title VII, including *quid pro quo* sexual harassment, hostile environment sexual harassment, and retaliation.

### B. Intentional Infliction of Emotional Distress

Although Quarles originally asserted a claim for intentional infliction of emotional distress against both Defendants, she has acknowledged that her claim against the County is barred by law. (*See* Pl.'s Resp. at 2.)[9] There are four required elements that a plaintiff must establish in order to show the existence of a *prima facie* case for intentional infliction of emotional distress. Those elements are that: (1) the defendant's conduct must be intentional or reckless, (2) the conduct must be extreme and outrageous, (3) there must be a causal connection between the wrongful conduct and the emotional distress and, (4) the emotional distress must be severe. *See Bridges v. Winn–Dixie Atlanta,* 176 Ga.App. 227, 335 S.E.2d 445, 447–48 (1985).

In *Bridges,* the Georgia Court of Appeals notes that while Georgia law does recognize the tort of intentional infliction of emotional distress, "[t]he burden which the plaintiff must meet in order to prevail in this cause of action is a stringent one...." *Id.* 335 S.E.2d at 447. To succeed on this claim against Adams, Quarles must show that his actions were "so terrifying or insulting as naturally to humiliate, embarrass or frighten" her. *Id.* Although the existence of an employment relationship "may produce a character of outrageousness that otherwise might not exist ... [i]t must be emphasized ... that major outrage in the language or conduct complained of is essential to the tort." *Id.* at 448.

In determining whether Quarles properly asserted a claim of intentional infliction of emotional distress against Adams, the Court must also focus on the severity of the emotional distress produced by Adams' conduct. *Id.* The emotional distress must be "highly unpleasant." *Id.* Moreover, "[t]he law intervenes only where the distress inflicted is *so severe* that no reasonable man could be expected to endure it...." *Id.* (emphasis added).

In the case at bar, even if the Court assumes that Quarles can satisfy the first three elements of the *prima facie* test, she simply has not shown that the emotional distress was so severe that, as a reasonable person, she could not endure it. Quarles admits that she has sought neither the help of a physician nor a counselor since her termination in early 1995. Furthermore, she resumed working after her termination and, apparently, is able to satisfy the often stressful duties of serving as an EMT. Finally, Quarles has produced no evidence beyond her own assertions to support her claim that she has suf-

9. Under Georgia law, the state is immune from suit under the doctrine of sovereign immunity. *See* Ga. Const. art. I, § 2, ¶ 9 (1995); *Woodard v.* *Laurens County,* 265 Ga. 404, 456 S.E.2d 581, 583 (1995).

fered *severe* emotional distress, as the law requires.

Accordingly, the Court finds that Quarles has not shown a *prima facie* case for intentional infliction of emotional distress. The Court will, therefore, grant Adams' motion for summary judgment on this issue.

## CONCLUSION

The Court has considered the motions for summary judgment filed by both Defendants, as well as the arguments raised by Quarles. For the foregoing reasons, Adams' motion for summary judgment on all federal claims based on Title VII brought against him in his individual capacity is hereby **GRANTED.** Adams will remain as a named party in this matter given his official capacity as a supervisory employee of the County. Adams' motion for summary judgment on the state law claim is hereby **GRANTED.**

The County's motion for summary judgment, however, is hereby **DENIED.** The Clerk is directed to enter the appropriate judgment.

**SO ORDERED.**